### RINN v. HOLMSTROM et al.
### No. 9978.

Court of Civil Appeals of Texas.
Austin.

Nov. 7, 1951.

Rehearing Denied Nov. 28, 1951.

Krueger & Krueger, Harry S. Pollard, Austin, for appellant.

E. M. Grimes, Taylor, House, Mercer & House, by R. H. Mercer, San Antonio, for appellees.

GRAY, Justice.

Appellant sued appellees to recover for personal injuries and for damages to his automobile sustained in a collision with a station wagon in the intersection of Talbot Street and Tenth Street in the City of Taylor, Texas.

Talbot Street runs north and south and Tenth Street runs east and west. On the morning of November 11, 1949, appellant was traveling south on Talbot Street in a red Ford Sedan automobile and at the same time Raymond Holmstrom was traveling east on Tenth Street in a Chevrolet station wagon owned by Thomas Holmstrom, Jr. These vehicles collided in the intersection of these streets at a point approximately two feet south and two feet west of the center of the intersection.

Appellant alleged that Raymond Holmstrom was negligent in various respects and that each act of negligence was a proximate cause of his injuries and damage. Appellees answered that appellant was negligent in various ways which acts of negligence were each a proximate cause of the collision. By their cross action, appellee T. W. Holmstrom, Sr. sued as next friend of Raymond Holmstrom, a minor, for personal injuries sustained by Raymond Holmstrom, and, individually, for medical and hospital expenses incurred. T. W. Holmstrom, Jr., sued to recover for damages sustained to the station wagon. They alleged appellant was negligent in various respects and that each alleged act of negligence on the part of appellant was a proximate cause of the alleged injuries and damages.

Upon a non-jury trial all parties were denied any recovery for damages and the costs were assessed against appellant who has appealed.

The trial court filed findings of fact and conclusions of law. He found that Raymond Holmstrom failed to keep a proper lookout, that such failure was negligence and a proximate cause of the accident. His findings of facts fifteen and sixteen are the only ones material here. These are:

"15. That just before and at the time of the accident, Walter E. Rinn failed to keep a proper lookout, which failure on his part was negligence and which negligence was a proximate cause of the accident.

"16. That just before and at the time of the accident, Walter E. Rinn failed to yield the right of way to Raymond Holmstrom (who was approaching from the right of Walter E. Rinn) which was negligence on the part of Walter E. Rinn, and which negligence was a proximate cause of the accident."

By his conclusions of law number one, the trial court concluded that appellant was not entitled to recover any amount from any of the appellees, and by his conclusion of law number three that appellant should pay all costs.

Appellant's points one to four, both inclusive, are directed to findings of fact 15 and 16, supra, and are to the effect that such findings are not supported by any competent proof, are contrary to the undisputed proof and the overwhelming preponderance of the competent proof. Points five and six are directed to conclusions of law one and three, supra.

It is well-settled that the findings by a trial court, a jury being waived, will be upheld unless such findings are manifestly erroneous, and a reversal is not authorized even though the evidence may admit a different finding from that made by the trial court. Biggs v. Hinds, Tex.Civ.App.,

177 S.W.2d 288, error ref., w. o. m. Necessarily, the credibility of the witness and the weight to be given to the testimony was for the trial court.

The record before us shows that Talbot was a graveled street and that Tenth was paved. At the intersection, the pavement extends north into Talbot a distance of twenty-one and one-half feet from the inside of the north curb of Tenth Street. The pavement on Tenth Street extends from curb to curb, a distance of 24 feet. At the intersection of these streets, the block immediately west of Talbot and immediately north of Tenth is 270 feet. On the northwest corner of the intersection there was a frame house 34 feet west of Talbot and north of Tenth Street. Between this house and Tenth Street there was a pecan tree which was 41 feet west of Talbot and 12 feet north of Tenth Street. Also, there was a house on each of the other corners of the intersection. There were no traffic signals at either the north or west entrances to the intersection. The damage to the station wagon was on its left side and principally toward its front, the front points of its frame were bent to the right approximately four inches. The damage to the Ford was on its right side and approximately at its right front wheel. After the collision the Ford traveled east down Tenth Street approximately 100 feet, went over the north curb and came to rest on an adjoining lawn. The station wagon came to rest at the southeast corner of the intersection with one rear wheel in the gutter and the rest of the car over the curb in a yard. There were slight skid marks made by the front wheels of the station wagon "leading right into the point of impact" and appeared to have been made immediately prior to the collision. No other skid marks were visible. Appellant had approached the intersection traveling in the center of Talbot Street. Tenth Street slopes to the east and Talbot slopes to the north.

At the time of the accident there was one car going south on Talbot Street, it had crossed the intersection and was approximately one-half block south of it at the time. The occupants of this car did not see the accident but knew it happened. Mr. Martin Zschiesche and his small daughter were riding bicycles on Tenth Street and were stopped on the east side of the intersection where the accident occurred. Mrs. Challeriner was in her yard at the southwest corner of the intersection and saw the two vehicles approaching and saw the collision. The drivers of the two vehicles were each alone. These named parties (except the daughter of Martin Zschiesche who did not testify) were the only witnesses to testify to the actual happening of the collision.

The police officer who investigated the accident testified that a person traveling south on Talbot Street at approximately 48 feet north from the north curb of Tenth Street could get a clear view of the next intersection of Tenth Street to the west. Appellant testified:

"Q. What would you estimate, as accurately as you can, your speed as you proceeded up this incline on Talbot Street going south? A. About 20 miles an hour.

"Q. What, if anything, did you do as you approached the intersection of Tenth Street and Talbot Street? A. When I got close to Tenth Street, I slowed up; I looked to my right and I looked over to my left, and I did not see no cars coming, and so I proceeded across the street."

And further:

"Q. Now, what, in distance, would you estimate your position when you looked to your right and to your left to see whether or not there was any approaching traffic, your distance back from the north curb line of Tenth Street. A. Well, I would say about 40 feet.

"Q. About 40 feet? A. Yes, sir.

"Q. Was that your distance when you looked to your right or when you looked to your left? A. When I looked to my right.

"Q. Were you stopped or were you still moving at the time you were looking? A. I was still moving.

"Q. Now, after you had looked to your right and to your left, did you say that you did not see any cars in either direc-

tion approaching you? A. No, sir, I did not.

"Q. What did you do then, having looked both to your right and your left and seeing no cars there, what did you do? A. I put my foot on the accelerator and started going.

"Q. What do you mean by that, that you started going; what do you mean? A. Well, I started to cross the street, and I had to put my foot on the accelerator to keep my car going.

"Q. The incline still existed? A. Yes, sir.

"Q. Did you step on the gas and put your foot on the accelerator lightly or heavily or in what manner? A. No, lightly.

"Q. All right; you say you proceeded into the intersection crossing the street? A. Yes, sir.

"Q. Did anything occur then while you were in that intersection? A. Well, I could not say what occurred, because the first thing I knew then, I was in the hospital.

"Q. Do you recall anything happening while you were in the intersection? A. No sir; something must have hit me because that is the last I remember, when I drove in there."

He stated he never did see the vehicle he collided with, and did not see the bicycles to his left.

Raymond Holmstrom testified that as he approached the intersection he was travel-ing at about 25 miles per hour; that when he was about a half block away he saw the first car (evidently this was the car that was south of the intersection at the time of the collision); that he slowed down a little because he thought he would have to stop for him; that he was about half way in the intersection when he saw appellant's car and that it was about 40 feet behind the first car. He later said when he first saw appellant's car that it was right on him and that it hit him. Mrs. Challenner testified:

"Q. Did you see the vehicles involved in the accident before the collision took place? A. Oh, yes.

"Q. Now, will you tell the Court what manner of vehicles they were or what kind of vehicles they were? A. Well, the one coming down Tenth Street was a station wagon, and the other one was some kind of a red car; I don't know what make it was.

"Q. In other words, there was a sta-tion wagon, and the other one was a red car? A. Yes.

"Q. And I believe you stated the one on Talbot was a red car? A. Yes.

"Q. And the one on Tenth Street was a station wagon? A. A station wagon, yes.

"Q. Did you have occasion to observe the speeds of the two vehicles just before the collision; what I mean by that is, did you have an opportunity to see them coming? A. Oh, yes.

"Q. Now, which of those vehicles— do you drive an automobile? A. Oh, yes; not right now, I don't but I have driven all my life.

"Q. Which of those vehicles was going the fastest? A. Oh, the red one.

"Q. Which one of the two vehicles got to the intersection first? A. The station wagon.

"Q. Tell the Judge just what took place; did they come together? A. Well, the red car ran into the other one, and threw it up on the corner of the block in front of me, and it bounced back—the red car bounced back and angled across the street and ran over the curb and into that prop-erty and stopped.

"Q. You may have the witness."

On cross examination she said:

"Q. Do you know which car reached the intersection first? A. The station wagon.

"Q. You are positive? A Oh, yes, be-cause it was so near; it was at those steps, you see."

The law imposed on appellant as he proceeded along Talbot, a public street, the duty of maintaining a proper lookout, that is, such lookout as a person of ordi-nary prudence would have kept under the

same or similar circumstances. Appellant said that as he approached the intersection he looked to his right and to his left and that he did not see any approaching vehicle. At this time he placed himself at a point where, according to other testimony, he had a clear view for one block to the west, and when, by a reasonable inference from Mrs. Challenner's testimony, the station wagon was on Tenth Street in that block.

These facts were sufficient to raise the issue of proper lookout. Blunt v. H. G. Berning, Inc., Tex.Civ.App., 211 S. W.2d 773, error ref. There is no evidence of any atmospheric conditions which interfered with appellant's view. Under all the evidence before us the testimony of appellant that he looked to his right and did not see any approaching vehicle was evidence relevant to the issue of a proper lookout. Blunt v. H. G. Berning, Inc., supra; Lackey v. Gulf, C. & S. F. Ry. Co., Tex.Civ.App., 225 S.W.2d 630; Coca-Cola Bottling Co. v. Krueger, Tex.Civ. App., 239 S.W.2d 669.

Appellant argues that the presumption that appellant, in approaching the intersection, exercised due care for his own protection and the safety of others must prevail here. This presumption prevails only until it is overcome by proof of facts to the contrary. Blunt v. H. G. Berning, Inc., supra. Here the trial court heard the testimony of Mrs. Challenner who placed herself in position to see both vehicles as they approached the intersection and to see the collision. Her testimony, together with the physical facts and other testimony, was sufficient to support the trial court's finding 15, supra. Appellant relies on the testimony of Martin Zschiesche. His testimony is in conflict with that of Mrs. Challenner and Raymond Holmstrom if not also with some of the physical facts. Such conflict was for the trial court and he resolved it.

Finding of fact 16, supra, must be measured by the facts existing at the time the accident occurred, and that appellant in approaching the intersection with the purpose of crossing it, must exercise ordinary care for his own and the safety of others. The fact that he failed to keep a proper lookout and failed to yield the right of way to the station wagon which had approached the intersection from appellant's right and, at the time, had already entered the intersection (which facts are supported by the testimony of Mrs. Challenner and Raymond Holmstrom) presented issues of fact as to the negligence of appellant in entering the intersection at the time and under the circumstances he did, and whether or not such negligence was a proximate cause of the accident. There being evidence from which the trial court could find as he did, the findings are conclusive here.

The trial court having found that appellant's negligence was a proximate cause of the accident, his conclusion that appellant was not entitled to recovery from appellees was proper, and Rule 131, Texas Rules of Civil Procedure directed that the costs be assessed against appellant.

Appellant undertakes to excuse himself of negligence and to establish that the accident was caused solely by the negligence of Raymond Holmstrom in substantially the following manner: By calculating the distance in feet from the point of impact to the north and the west lines of the intersection; a comparison of the weights of the two vehicles; the damage to appellant's car, and argues that these facts, together with the fact that appellant's car was "knocked" 115.45 feet show that Raymond Holmstrom was traveling at a greater speed than appellant and that Raymond Holmstrom was a substantial distance from the intersection and beyond the view of appellant at the time appellant was well into the intersection. These facts were before the trial court and he having rejected appellant's conclusion, we are in no position to disturb his findings.

The judgment of the trial court is affirmed.

Affirmed.