The CITY OF HOUSTON, Texas, Mayor Kathryn J. Whitmire, Lee P. Brown, and The Firemen's and Policemen's Civil Service Commission of the City of Houston, Appellants,

v.

Richard W. LEE, et al., appellees.

No. 01–87–00283–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 13, 1988.

Rehearing Denied Dec. 1, 1988.

Jerry E. Smith, City Atty., John E. Fisher, Asst. City Atty., Robert J. Collins, Sr. Asst. City Atty., Houston, for appellants.

Gene Jones, Joan Marie Lucci Bain, Houston, for appellees.

Before WARREN, LEVY and DUGGAN, JJ.

## OPINION

DUGGAN, Justice.

This appeal tests the legality of the City of Houston's creation by ordinance and staffing of nine positions in the City of Houston Police Department ("HPD") as part of its "civilianization" program. Houston, Tx., Ordinances 82–1165 (July 27, 1982), 84–1290 (August 21, 1984), 85–568 (April 23, 1985), and 86–1278 (July 23, 1986).

Appellants, the City of Houston, Mayor Kathryn J. Whitmire, Chief of Police Lee P. Brown, and the Firemen's and Policemen's Civil Service Commission of the City of Houston, appeal a final judgment entered following a non-jury trial. The judgment: (1) declared void four City of Houston ordinances insofar as the ordinances attempted to create certain civilian positions within HPD in contravention of former Tex.Rev. Civ.Stat.Ann. art. 1269m [1], the firefighters' and police officers' civil service statute; (2) enjoined the City from hiring civilians to fill certain positions in HPD; and (3) awarded back pay, promotion, and attorney's fees to 16 named plaintiff appellees.

The appellees are police officers who allege that they should be promoted to fill either the new positions created by the ordinances or the vacancies created by the promotion of other officers into the new positions, if the procedures of article 1269m are applicable.

Historically, the Houston Police Department has hired numerous civilian employees in addition to the uniformed classified officers appointed pursuant to article 1269m. The number of civilian employees has doubled since 1970; at the time of trial, HPD employed approximately 4,600 classified police officers and 2,000 civilians. The civilian employees serve as clerks, clerk typists, secretaries, word processor operators, administrative assistants, chemists, computer programmers, crisis counselors, psychologists, financial officers, automobile

---

**1.** *Repealed by* ch. 149, § 49(1), 1987 Tex.Gen. Laws 1306, *recodified as* Loc.Gov't Code Ann. §§ 143.001–.134 (Vernon 1988).

mechanics, janitorial and maintenance personnel, and in other positions.

Uniformed classified officers and civilian personnel within HPD are employed under different authority. Classified police officers are hired pursuant to article 1269m for positions created by municipal ordinance consistent with article 1269m, while civilian personnel are employed under the municipal civil service system established by city charter. All classified officers receive the same pay, while civilian employee salaries are set within a range. Unlike classified officers, civilians are not entitled to overtime pay. Classified officers, under article 1269m, are either class A, with 1,400 hours of training at the police academy prior to employment, class B, with 340 hours of training, or class C, with between 240 and 280 hours of training.

Many work assignments within HPD do not require the specialized training required of uniformed officers for law enforcement duties. A series of management studies, beginning with the April 1983 HPD "Plan of Action" report, have stated that a need exists to hire additional civilians throughout HPD for managerial and technical roles to free up trained police officers for the "police work" that only classified law enforcement personnel can do. A March 1983 study recommended that the HPD garage be placed under the direction of a professional fleet management, and that it function as a separate entity under the command of the police chief. A December 1984 report on recruit training recommended that a qualified educational specialist be hired to head the police academy.

Although law enforcement training is not required for many HPD jobs, classified police officers nevertheless fill such jobs, working side by side with civilian employees in many divisions. The Office of Planning and Research, for example, is staffed by 29 civilians and 18 classified officers.

By City Ordinances 82–1165, 84–1290, and 85–568, the Houston City Council created nine "civilian" positions between 1982 and 1985 within HPD: four police administrators, two assistant police administrators, one urban policy planner IV, one administrative assistant IV, and one education coordinator in the police academy. The City hired civilians to fill each of these positions and did not follow the procedures set out in article 1269m for the appointment or promotion of classified police officers.

Each of the four civilian police administrators assumed duties supervising a division,[2] duties formerly assigned to captains; the two civilian assistant police administrators each assumed duties formerly performed by lieutenants. The classified police officers who were previously assigned to perform these duties were reassigned within HPD, but their positions were never abolished by city council ordinance. The urban policy planner IV, the administrative assistant IV, and the education coordinator each assumed posts allegedly "equivalent in salary and assignment" to those held by lieutenants.

On January 20, 1986, four new HPD bureaus, created by City Ordinance 86–1278, were implemented in a plan of reorganization: (1) the Management Information Bureau, formerly the Technical Services Bureau, with the added duties of the now-abolished Computer Services Division; (2) the Fleet Maintenance Bureau, created by the elevation of the former Police Garage Division to bureau status; (3) the Career Development Bureau, which assumed the duties previously performed by the Personnel Services Bureau; and (4) the Office of Planning and Research, created by the elevation of the former Planning and Research Division to bureau status. The four civilian police administrators were promoted to head these bureaus. Prior to this reorganization, bureaus were traditionally headed by deputy chiefs.

Appellees filed suit alleging that the four bureau posts headed by the new police administrators were classified positions under article 1269m and should have been

2. The divisions involved were:
Planning and Research Division; Houston Crime Information Center (H.C.I.C.) Division; Police Garage Division; and the Police Training Academy.

filled, under the procedures of Tex.Rev.Civ. Stat.Ann. art. 1269m, § 10 [3], by the appellee captains,[4] who, by virtue of examination grades, occupied the second, third, and fourth places on the deputy chief eligibility list. The standing and status of the remaining appellees follows in a domino-like sequence. The five appellee lieutenants [5] occupied the top five places on the captain eligibility list, and alleged that they would have been promoted to the four captain positions that would have been vacated, had four captains been promoted to the bureau commander positions, and to one of the two vacancies in the police administrator posts resulting from the civilians' promotion, which would have allowed two lieutenants to be promoted to captain and would have created two vacant lieutenant positions.

Appellees further alleged that six sergeants who did not join in this suit would have been promoted to lieutenant had six lieutenants been promoted to captain. Four intervenor-appellees, all sergeants,[6] alleged that they would have been promoted to four lieutenant positions that would have been vacant had the top five lieutenants been promoted to captain to assume command of the police administrator divisions to which the civilians had been appointed. The sergeants occupied the first, third, fourth, and fifth positions on the lieutenant eligibility list.

The appellee police officers [7] occupied the top four positions on the sergeant eligibility list, and alleged that they would have been promoted to four of the six sergeant positions that would have been vacated had six sergeants been promoted.

Appellees also contended that the civilians' assumption of duties that were traditionally performed by classified police officers caused the civilians to function as classified police officers and constituted, in effect, the abolition of positions within a classification, action that required a showing of good cause by the City. *City of San Antonio v. Wallace,* 338 S.W.2d 153, 157 (Tex. 1960).

Appellees sought promotion in rank, increased pay, and longevity time credit from January 20, 1986, the date upon which they allege their promotions should have been effective. Additionally, appellees sought injunctive relief prohibiting the City from filling these posts with civilians.

Essentially, appellees' claim is that the four newly created police administrator positions heading the four new bureaus, and the two assistant police administrator positions, all now occupied by civilians, are positions specifically described by title, to-wit: bureau commander and division director, and are within the civil service classifications of deputy chief and captain, respectively, even though the City did not expressly create these posts as "positions" within those classifications. Obviously, appellees' argument is premised on the conclusion that these posts are required to be within an article 1269m classification, thus prohibiting the appointment of civilians.

After a non-jury trial, the trial court entered judgment for appellees that: (1) promoted them to the ranks sought; (2) awarded them salary increases retroactive to January 20, 1986; (3) permanently enjoined the City from employing civilians to assume duties traditionally assigned to police officers; and (4) ordered the City to pay appellees' attorney's fees. The court filed findings of fact and conclusions of law consistent with its judgment.

Article 1269m creates a firemen's and policemen's civil service and civil service commission, and provides for the classification of policemen within police departments and for their promotion to higher classifica-

3. Ch. 325, 1947 Tex.Gen.Laws 550, *repealed by* ch. 149, § 49(1), 1987 Tex.Gen.Laws 1306.

4. E.E. Milam, M.C. Simmons, and H.A. Contreras.

5. Richard W. Lee, Delvin H. Kendrick, Murvel L. Yates, Jerry W. DeFoor, and Sam A. Merrill.

6. Stephen P. Ward, Robert L. Watson, John C. Modesette, and Andrew L. Gilbert.

7. Dana F. Moran, D.R. Simerly, Carlos Gonzalez, and D.E. Elder.

tions according to their positions on eligibility lists after competitive examinations.

Section 2[8] defines a "policeman" as

any member of the Police Department or other peace officer appointed to such position in substantial compliance with the provisions of Sections 9, 10, and 11 of *this Act, or entitled to Civil Service Status under Section 14B or 24 of this Act.*

Section 8(a)[9] provides that:

In a city having a population of 1,500,000 or more, according to the most recent federal census, *the* [Firefighters' and Police Officers' Civil Service] *Commission shall provide for the classification of all ... policemen.* Such classification shall be provided by ordinance of the City Council, or legislative body. Said City Council, or legislative body, shall prescribe by ordinance the number of positions of each classification. (Emphasis added.)

City of Houston ordinances have uniformly ranked Houston police officers below the non-classified chief of police in the following ranks or classifications, from highest to lowest: assistant chief, deputy chief, captain, lieutenant, sergeant, police officer, and probationary police officer.

Article 1269m, § 8(b)[10] provides that:

Except as expressly provided by Subsection (f) of this section, *no classification now in existence, or that may be hereafter created* in such cities, *shall ever be filled except by examination held in accordance with the provisions of this law....* All vacancies shall be filled by permanent appointment from eligibility lists furnished by the Commission within sixty (60) days after such vacancy occurs. If no list is in existence, the vacancy shall be filled from a list which the Commission shall provide within ninety (90) days after such vacancy occurs. (Emphasis added.)

Section 8(c)[11] provides that:

Firemen and policemen shall be classified as above provided, and shall be under civil service protection....

Section 8(f)[12] provides that:

In any city having a population of 1,500,000 or more ... the Fire Chief or Police Chief may appoint persons to hold command staff positions in their departments subject to the following:

(1) The Police Chief may appoint to any position at the rank of Assistant Chief any member of the classified service who has served for at least five (5) years in the department as a sworn police officer and who meets the additional qualifying criteria.... An appointment may not be made before the required qualifying criteria have been established and approved as prescribed by this subdivision.

Section 9(a)[13] requires the Civil Service Commission, in order to compile the eligibility lists for classifications mandated in § 8(b), to conduct examinations of qualified persons making proper application. Section 9(a) provides further:

All eligibility lists for applicants for original positions in the Fire and Police Departments shall be created only as a result of such examinations, *and no appointments shall ever be made for any position in such Departments except as a result of such examination,* which shall be based on the applicant's knowledge of and qualifications ... for police work and work in the Police Department, as shown by competitive examinations in the presence of all applicants for such position, and shall provide for thorough inquiry into the applicant's general education and mental ability. (Emphasis added.)

8. Ch. 958, § 21, 1985 Tex.Gen.Laws 3240, *repealed by* ch. 149, § 49(1), 1987 Tex.Gen.Laws 1306.

9. Ch. 958, § 1, 1985 Tex.Gen.Laws 3227, *repealed by* ch. 149, § 49(1), 1987 Tex.Gen.Laws 1306.

10. *Id.*

11. *Id.*

12. *Id.*

13. Ch. 958, § 4, 1985 Tex.Gen.Laws 3229, *repealed by* ch. 149, § 49(1), 1987 Tex.Gen.Laws 1306.

Section 10 governs the procedure for filling a vacant classified position:

When a vacancy occurs in the ... Police Department, the ... Police Chief or head of the Police Department shall request in writing from the Commission the names of suitable persons from the eligibility list, and the Director shall certify to the chief executive of said city, the names of three (3) persons having the highest grades on the eligibility list, and the said chief executive shall thereupon make an appointment from said three (3) names. The appointment shall be of the person with the highest grade, except there be a valid reason why such appointment should be given to the one making the second or third highest grade. Whenever such appointment is made of one not holding the highest grade, such reasons shall be reduced to writing and filed with the Commission, and there shall be set forth plainly and clearly good and sufficient reasons why said appointment was not made to the person holding the highest grade in the event the one holding the third highest grade shall receive the appointment.

Section 12 [14] provides that:

(a) A person who has received an appointment to the ... Police Department hereunder, shall serve a probationary period of one (1) year from date of employment with the Department ... as a Policeman, or trainee in an academy.

. . . .

(c) ... When ... Policemen ... have served the full probationary period, having been appointed in substantial compliance with Sections 9, 10, and 11 of this Act and not otherwise, they shall automatically become full-fledged civil service employees and shall have full civil service protection. *All positions in the ... Police Department, except that of Chief or head of the Department, shall*

be classified by the commission and the positions filled from the eligibility lists as provided herein. (Emphasis added.)

Section 14 [15] sets out a procedure similar to that of § 10 for promotional appointments:

The Commission shall make rules and regulations governing promotions and shall hold promotional examinations to provide eligibility lists for each classification in the Police and Fire Departments....

. . . .

F. The Commission shall proceed to hold examinations to create eligibility lists within ninety (90) days after a vacancy in any classification occurs, or new positions are created, unless an eligibility list is in existence. If an eligibility list exists, the Commission shall certify within ten (10) days after notification of the vacancy to the Head of the Department the names of persons eligible to fill all promotional positions. The certified names must come from the eligibility list which exists on the date the vacancy occurs.

G. *In the event any new classification is established either by name or by increase of salary, the same shall be filled by competitive examination in accordance with this law.* (Emphasis added.)

Section 16a [16] provides that the purpose of this statutory scheme for appointment and promotion within the police department is to secure to the cities affected thereby efficient Police and Fire Departments, composed of capable personnel, free from political influence, and with permanent tenure of employment as public servants.

In their first through thirteenth points of error, appellants contend that the trial court erred in entering the injunction and judgment against them because:

(1) as a matter of law, the City of Houston is not prohibited from hiring civilian

**14.** Ch. 215, § 1, 1981 Tex.Gen.Laws 525, *repealed by* ch. 149, § 49(1), 1987 Tex.Gen.Laws 1306.

**15.** Ch. 910, § 4, 1985 Tex.Gen.Laws 3047, *repealed by* ch. 149, § 49(1), 1987 Tex.Gen.Laws 1306.

**16.** Ch. 424, § 1, 1977 Tex.Gen.Laws 1130, *repealed by* ch. 149, § 49(1), 1987 Tex.Gen.Laws 1306.

employees either to perform functions within the Houston police department or to supervise classified police officers, so long as those police officers are not performing traditional law enforcement functions;

(2) the creation of the civilian posts that encompass administrative duties previously assigned to officers in classifications neither constitutes the creation of new classifications that must be filled by the procedures of article 1269m nor abolishes any positions within an article 1269m classification;

(3) there is no evidence that the appointed civilians perform law enforcement duties; and

(4) as a matter of law, no vacancies existed within a classification that were required to be filled under article 1269m.

We agree with each of appellants' above contentions and reverse the judgment of the trial court.

In analyzing the parties' positions, we note that some confusion arises from the use within article 1269m of the terms "classification" and "position," with no statutory definition of either term.

The terms "rank" and "classification" within HPD are synonymous. Section 8(a) provides that "[s]aid City Council ... shall prescribe by ordinance the number of positions of each classification." Thus, the term "position," when applied to policemen within a classification, indicates the number of individuals employed at a given rank, e.g., 34 captains, 8 deputy chiefs, and 4 assistant chiefs. In some cities, positions within a classification of policemen or firemen are defined in the establishing ordinances by titles reflecting the *duties* involved. An example of this is the "plans checker" position within the fire lieutenant classification in *McLeod v. City of San Antonio*, 702 S.W.2d 279 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.). However, the only evidence before the trial court showing article 1269m classifications for

HPD consisted of the 28 successive personnel ordinances enacted by the Houston City Council between December 31, 1980, and February 11, 1986. The accompanying certificate of the Houston City Secretary attested that these were the only "personnel ordinances creating and recreating positions, classes and classifications for Police Department classified personnel" within that time period. None of the ordinances described the positions established by titles indicating the duties to be performed. Stated otherwise, no ordinance specifies that a bureau, division, office, or other HPD unit must *per se* be headed by a classified officer.

Viewing article 1269m overall, we note first that the act requires only that *law enforcement personnel* be classified. Section 8(a) requires the City to classify *"policemen."* Section 2 defines a "policeman" as a peace officer appointed in substantial compliance with the procedures of §§ 9, 10, and 11,[17] or entitled to civil service status under §§ 14B or 24,[18] of the act. Section 9(e)[19] requires that, to be certified as eligible for a "beginning position with a Police Department," an applicant must meet "all legal requirements necessary to become eligible for future licensure by the Commission on Law Enforcement Officer Standards and Education." Section 12(c) provides that policemen who have served the one year probationary period required by § 12(d), and who were "appointed in substantial compliance with §§ 9, 10 [and] 11 of this Act and not otherwise, ... shall automatically become full fledged civil service employees and shall have full civil service protection."

From this requirement of eligibility for licensure as a law enforcement officer as a prerequisite for initial qualification as a policeman, we conclude that the "positions" spoken of in §§ 9(a), 12(c), and elsewhere within article 1269m are *law enforcement* positions, and the definition of a

**17.** Ch. 325, 1947 Tex.Gen.Laws 550, *repealed by* ch. 149, § 49(1), 1987 Tex.Gen.Laws 1306.

**18.** Ch. 325, 1947 Tex.Gen.Laws 550, *repealed by* ch. 149, § 49(1), 1987 Tex.Gen.Laws 1306.

**19.** Ch. 910, § 4, 1985 Tex.Gen.Laws 3047, *repealed by* ch. 149, § 49(1), 1987 Tex.Gen.Laws 1306.

"policeman" includes only a member of the department performing law enforcement duties; article 1269m does not govern the HPD employee who works in an administrative or policy-making capacity, but performs no law enforcement duties.

The dissent focuses upon a select portion of § 9(a)'s text ("no appointments shall ever be made for any position in [the police] department except as a result of [competitive] examination") as mandating that all *jobs* within HPD are classified civil service posts that must be filled by competitive examinations. Such a reading ignores both (1) the context of § 9, which pertains to classified positions and the eligibility exams required to obtain such positions, and (2) past case law and remedial legislative action. It would make little sense to require that a secretary or manager of building maintenance have law enforcement training.

■ Second, an overview of article 1269m shows that, except for requirements for the assistant chief position, as set out in § 8(f)(1), nothing in the act prohibits the employment of civilians within a police department in administrative or policy-making capacities, as long as these civilians are not assigned to perform duties that must be performed by certified peace officers. Section 8(f)(1) specifically restricts appointment to an assistant chief position to "any member of the classified service who has served for at least five (5) years in the department as a sworn police officer and who meets additional qualifying criteria...." Neither does article 1269m prohibit the employment of civilians within police departments to perform jobs previously performed by classified officers, but which do not require the performance of law enforcement duties, or to perform jobs that involve the supervision of classified officers who perform non-law enforcement duties. The City of Houston "as a home-rule city has the power and authority to do anything and everything not prohibited by, in conflict with or inconsistent with the Constitution or a general law." *Wright v. City of Fort Worth*, 497 S.W.2d 88, 90 (Tex.Civ.App.—Fort Worth 1973, writ ref'd

n.r.e.) (posts in Aircraft Crash Rescue Squad in city's aviation department were not required to be classified fire department positions under article 1269m). None of the civilians appointed to positions created by the City of Houston ordinances in question either perform law enforcement duties or supervise classified police officers who are performing duties that require that they be certified peace officers.

■ This holding is consistent with the stated purpose of the statute set forth in § 16(a). Those who do "police work," that is, who enforce the law, make arrests, and conduct criminal investigations, are guaranteed permanent tenure and the opportunity for promotion on the basis of merit, although such enforcement of the laws may be controversial. Police officers need not fear that they will be fired or will lose the opportunity to be promoted if they enforce an unpopular or controversial statute, or arrest a popular person. Department employees who perform administrative and policy-making duties, and who are not involved in enforcing the law in specific cases, are not exposed to this type of controversy, and therefore do not fall within the protective policy underlying article 1269m. Accordingly, article 1269m, § 8 does not require the classification of positions within HPD that do not involve the performance of law enforcement duties. Thus, when read in context, the wording of § 9(a) that "no appointment shall ever be made for any position in such Departments except as a result of such [civil service] examination," refers to appointment to a classified position as a law enforcement officer.

Nothing in the record indicates that the newly created civilian posts require the exercise of law enforcement duties. Accordingly, the positions of Commander of the Management Information Bureau, Commander of the Fleet Maintenance Bureau, Commander of the Career Development Bureau, Commander of the Office of Planning and Research, Division Commander of the Computer Services Division, Division Commander of the Police Training Academy, Police Administrator, and Assistant

Police Administrator are not required to be classified under article 1269m; neither have they in fact been classified by ordinance duly enacted by the city council, the only agency authorized to make such classification. Therefore, as a matter of law, no vacancies existed in an article 1269m classification for any of these positions.

Further, we find no evidence in the record to support the trial court's finding that any positions within article 1269m classifications were abolished. *King v. Bauer*, 688 S.W.2d 845 (Tex.1985); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). Appellees produced no evidence of formal abolition of any positions by ordinance. Neither was there evidence that the number of positions in any classification was reduced by the creation of the civilian posts; therefore, there being no reduction or abolition of classified positions, the City was not required to prove that it acted in good faith in abolishing positions.

Appellants' first through thirteenth points of error are sustained.

Appellants contend in their fourteenth point of error that the trial court erred in awarding attorney's fees to appellees because the doctrine of sovereign immunity bars such an award. Generally, governmental immunity applies to governmental functions exercised by a municipality. *Gates v. City of Dallas*, 704 S.W.2d 737 (Tex.1986). Such immunity extends to public officials. *Steele v. Barbian*, 620 S.W.2d 875, 878 (Tex.Civ.App.—Amarillo 1981, no writ); *Kelly v. Galveston County*, 520 S.W.2d 507, 512 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ). Providing police protection is a governmental function. *Burnett v. City of Houston*, 442 S.W.2d 919 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ ref'd). Appellees contend that the City is liable for attorney's fees under Tex.Civ.Prac. & Rem.Code Ann. §§ 37.009, 104.001, 104.002 (Vernon 1986). Thus, we must determine whether the City's governmental immunity from liability for attorney's fees has been waived by these statutes.

We find nothing in § 37.009 of the Uniform Declaratory Judgment Act that constitutes a waiver of governmental immunity. It provides: "[i]n any proceeding under this chapter the court may award costs and reasonable and necessary attorney's fees as are equitable and just." This issue is similar to that in *Texas Employment Comm'n v. Camarena*, 710 S.W.2d 665 (Tex.App.—Austin 1986, no writ), *rev'd on other grounds*, 754 S.W.2d 149 (Tex. 1988), wherein the court stated:

> [t]here is in § 37.009 nothing that even remotely suggests a waiver of governmental immunity in suits brought under the Uniform Declaratory Judgments Act. Where such waivers *are* made, the Legislature does so in relatively explicit terms.

*Id.* at 671. Because we have found nothing implicitly or explicitly waiving governmental immunity, we hold that the appellants are not liable for attorney's fees under § 37.009. *See also Cole v. City of Houston*, 442 S.W.2d 445 (Tex.Civ.App.—Houston [14th Dist.] 1969, no writ).

Similarly, a review of §§ 104.001, 104.002, to determine whether those sections contain a waiver of immunity for the City and its officials, discloses that they do not; both sections refer only to the liability of the State, which is not a party to this suit. Nothing in these sections relates to municipal liability; therefore, the appellants are not liable for attorney's fees under §§ 104.001, 104.002.

Appellants' fourteenth point of error is sustained.

In light of our ruling on the fourteenth point of error, we do not reach appellants' fifteenth and sixteenth points of error, which also challenge the award of attorney's fees.

The trial court's judgment is reversed, the injunction issued is dissolved, and judgment is rendered that appellees take nothing.

LEVY, J., dissenting.

LEVY, Justice, dissenting.

I dissent because of a different understanding of Tex.Rev.Civ.Stat.Ann. art.

1269m, the firemen's and policemen's civil service statute. It generally provides for the classification of personnel within the police department (of the City of Houston, the "HPD") and the promotion of officers to higher classifications solely according to their positions on "eligibility lists," to be determined by competitive examinations. As with probably all civil service plans, the overriding purposes are to secure to the governmental units capable personnel, insulated from political pressures, with permanent tenure and promotion from within based wholly on merit and fitness, determined objectively by the forementioned competitive examinations.

Contrary to such salutary purposes, nine "civilian" positions were created by Houston city ordinances within the HPD, and each position was filled by the police chief with civilians who were not on any art. 1269m promotional eligibility list and who had not taken any qualifying or competitive examination. Each civilian appointee assumed duties previously performed by police officers who were then reassigned within the department. Later, four new bureaus were created, and the police chief promoted four outside civilian administrators to supervise these bureaus. None of them qualified by the art. 1269m examination procedures.

Appellees filed suit, alleging that the four bureau and nine administrative positions should have been filled by those at the top of the current respective promotional eligibility lists, with promotions for the resultant vacancies at the successively lower classifications also determined by the appropriate eligibility lists. The trial court entered a declaratory judgment declaring the forementioned municipal ordinances void as without authority to place non-classified civilian personnel in classified civil service positions within the HPD, finding that the appellants' actions and the ordinances violated the hiring and promotional mandates of art. 1269m, and directing that all appellees be promoted, with back pay, to the rank and from the date each should have been promoted, but for the described appointment of non-classified civilian personnel to such vacancies.

To prevent recurrence of what it called "a settled course of conduct," the trial court also permanently enjoined the appellants, *inter alia*, from hiring, promoting, or otherwise authorizing non-commissioned civilian personnel to work within classifications that are presently occupied, or have heretofore been occupied, by classified Houston police officers. Moreover, the court found that the appellants' actions were not motivated by a good faith desire to increase efficiency and economy within the HPD but, on the contrary, constituted intentional circumvention of the hiring and promotional scheme established by the civil service statute.

I agree substantially with the trial court, excepting only its finding as to absence of good faith, and would affirm its judgment.

In justifying its reversal of the trial court's judgment, based on the premise that civilians may be appointed to posts not within the art. 1269m classification scheme, the majority of this Court asserts that nothing in art. 1269m prohibits the employment of civilians in administrative or policy-making capacities within a police department. I read the legislative intent embodied in § 9(a) differently. It provides that, "no appointments shall ever be made for *any* position in [the police] department except as a result of [competitive] examination." (Emphasis added.) It is undisputed that the newly created bureau positions *are* positions within the HPD, and that none of the appointees was qualified by or selected from promotional eligibility lists. None had even taken examinations to qualify for placement on the eligibility list.

To avoid piecemeal erosion of the civil service objectives, for which erosion I fear the majority is hereby creating an unfortunate precedent, the statute requires that *any* position within the department be filled as a result of competitive examination. Furthermore, § 8(b) reinforces this unconditional command by providing that "no classification now in existence or that may be hereafter created ... shall ever be filled except by examination held in accordance with the provisions of this law ... All

vacancies shall be filled by permanent appointment from eligibility lists furnished by the commission within 60 days after such vacancy occurs."

Such sweeping—and occasionally imprecise [1]—language is deliberately designed, I think, to protect and preserve *fully intact* the integrity of the civil service ideal—that *all* hiring and promotion be based on not whom one knows or befriends, but rather on individual merit, to be strictly determined by the wholly objective criteria of competitive examinations. This ideal is, of course, grounded on the assumption—which, for the purposes of this discussion, I accept as valid—that the examinations *are* rationally designed to determine one's fitness to perform the job to which the examination pertains. The majority's somewhat strained interpretations, distinctions, differentiations, and exclusions, although explained by the many semantic and logical ambiguities of this statute, will in the long run, I fear, defeat the legislative intent and cause the disintegration of the objective "merit and fitness" rationale of civil service personnel policies governing hiring and promotion. As I understand the effect of the majority's dissolution of the trial court's injunction, it will immediately authorize civilian personnel to occupy supervisory positions over classified HPD officers, with serious erosion of the department's *esprit de corps* as an equally immediate, longlasting, and perhaps even more pervasive, result.

The ordinances in question purport to create "new" civilian positions that had *actually* been civil service positions in existing classifications within the HPD. Normal attrition—death, resignation, termination, etc.—then operated to displace existing classified positions, rather than the police chief promoting classified officers as vacancies occurred. Under the challenged ordinances, the chief appointed civilians to the "new" positions created by the ordinances without administering the competitive examinations mandated by art. 1269m. The challenged positions seem to have resulted from either the separation of a classified police officer, the combining of some, but usually not all, the duties of various classified officers for the purpose of elevating an existing classified position to a "bureau level" status, or restructuring of the police department to create "new" classified positions.

What emerges from the record evinces an operating principle cleverly developed by appellants that all classifications now in existence may be manipulated or replaced by civilian personnel merely by changing the name of the position. Such an innovative principle apparently assumes that the City of Houston, governed by the Home Rule Amendment, may do anything not prohibited by the Texas Constitution or the general law, as stated by the majority. *Wright v. City of Fort Worth*, 497 S.W.2d 88, 90 (Tex.Civ.App.—Fort Worth 1973, writ ref'd n.r.e.). But the City is *not* authorized to ignore or contravene a general statute enacted by the Legislature concerning the same subject as the City ordinance. *City of Wichita Falls v. Abell*, 566 S.W.2d 336, 339 (Tex.Civ.App.—Fort Worth 1978, writ ref'd n.r.e.); *Murphy v. Wright*, 115 S.W.2d 448, 551 (Tex.Civ.App.—Fort Worth 1938, no writ). As reflected in the statute, the civil service policy of this State is not dependent upon the mercy of municipal action, particularly where the effect of such action is to reduce the number of, or abolish, classified positions. A municipality has the burden of showing that it acted in good faith in abolishing a civil service position. *Moncrief v. Tate*, 593 S.W.2d 312, 314 (Tex.1980); *City of San Antonio v. Wallace*, 161 Tex 41, 338 S.W.2d 153, 158 (1960). I think it has the same burden where it re-shuffles the functions, or reduces the number, of such positions.

Appellants did not satisfy the trial court that they acted in good faith under the relevant authorities cited. We are bound

---

**1.** The language of §§ 9e and 12(c) may arguably be interpreted to apply only to law enforcement positions, as the majority so holds. Such a narrow construction, in my view, is inconsistent with the general intent and purpose of article 1269m, *viz.*, that *all* employees (*including* secretaries and building managers) of the HPD be hired or promoted *strictly* according to the competitive examination results directed by the statute.

by the trial court's findings as long as there is *some* evidence of probative force to support them—as I think there is—and provided that they are not against the great weight and preponderance of the evidence —and I believe they are not. *Akin v. Dahl*, 661 S.W.2d 917 (Tex.1983). Indeed, we are also bound to review the evidence in the light most favorable to the trial court's findings, considering only the evidence and reasonable inferences therefrom that support the court's findings, and rejecting all evidence contrary thereto. *Mediacomp, Inc. v. Capital Cities Communication, Inc.*, 698 S.W.2d 207 (Tex.App.—Houston [1st Dist.] 1985, no writ). Generally, the findings of fact by the trial court will not be disturbed unless *manifestly* wrong. This means above all that we are not entitled to substitute our judgment for that of the trial court even though the evidence may admit a different finding from that made by the trial court. *Rinn v. Holmstrom*, 243 S.W.2d 862, 863 (Tex.Civ.App.— Austin 1951, no writ). The majority has not satisfied me that the trial court was so plainly mistaken.

It seems clear to me that the trial court's judgment is based upon fact findings that appellants' actions constituted appointment of civilian personnel to existing classified positions within the HPD, where they would perform traditional law enforcement functions, and as such violated appellees' civil service protection rights by denying them promotions that they were entitled to under the mandatory provisions of art. 1269m. By placing civilians in classified positions—even accepting the majority's thesis that civilian employees are not entitled to civil service protection[2]—these civilians supervised, evaluated, and recommended discipline for classified police officers, especially in the police academy and the city jail operations. But non-classified HPD members are prohibited from performing "police work," which I think *necessarily* includes supervision of classified police officers, and the planning and directing of police operations, encompassing the city

jail, the police academy, the local substations, the huge garage facilities, etc.

Violation of appellees' civil service rights is seen even more clearly when the art. 1269m promotional scheme is analyzed. All vacancies or newly created classified positions must be filled from the top three names on the current active eligibility lists, promulgated as a result of competitive examination. These lists expire by operation of law one year from their inception. Article 1269m, § 14E(2). Police officers must retake the prescribed examination (and obtain one of the three highest grades on the second exam) in order to be first in line for promotion on the next eligibility list. Article 1269m, § 14E(1) and (f). If the officer is not advanced during the term of an eligibility list once he has attained one of the highest three positions on it, his opportunity for advancement may be lost or delayed indefinitely. In addition, once promoted, an officer need serve only two years at the advanced level before becoming eligible to take an examination for promotion to yet another and higher level.

Thus, the appellees who were denied the positions that were "phased out" and replaced by non-classified positions were denied not only a temporary opportunity for advancement—and their statutory *right* to that position—but potentially future advancements as well.

Other Texas courts have justifiably held that similar attempts to circumvent art. 1269m directives will be scrutinized closely. *City of San Antonio v. Wallace*, 338 S.W. 2d at 158; *City of Wichita Falls v. Harris*, 532 S.W.2d 653 (Tex.Civ.App.—Fort Worth 1975, writ ref'd n.r.e.). Upon a close and critical examination, as required by established judicial policy, I conclude that this record demonstrates that the City has not justified its contravention of the State civil service statute on the grounds of either economy or efficiency.

It remains to say briefly that the trial court's award of attorneys' fees against the appellants was appropriate and amply supported by the appellants' stipulation as

2. But even technical employees hired to perform technical functions within the HPD are

vested by art. 1269m with classified civil service protection, as the appellees argue in their brief.

to a reasonable hourly rate. I thought it was well established that a trial court could take judicial notice of reasonable fees incurred during a non-jury trial and its preparation, and upon appeal therefrom. *King Optical v. Automatic Data—Processing of Dallas*, 542 S.W.2d 213 (Tex.Civ.App.—Waco 1976, writ ref'd n.r.e.). It is reasonable to infer that the trial court did not intend to award appellees' attorneys' fees on appeal unless the appellees were successful on appeal. *Southern Farm Bureau Life Ins. Co. v. Reed*, 563 S.W.2d 634 (Tex.Civ.App.—Eastland 1978, writ ref'd n.r.e.). Of course, the majority's disposition of this appeal renders this problem moot—at least until the Texas Supreme Court adjudicates the merits.

For the foregoing reasons, I respectfully dissent and would affirm the trial court's judgment declaring those portions of the City of Houston's ordinances 82–1165, 84–1290, 85–568, and 86–1278, void insofar as they: (a) authorized the appointment of non-classified civilian personnel to classified positions within the HPD, where at least some of them would perform traditional law enforcement functions; (b) created new classifications that are required to be staffed only according to procedures established by article 1269m; or (c) abolished several positions within the article 1269m classification scheme, and would also affirm its findings of fact and injunctive relief.