Richard W. LEE, et al., Petitioners,

v.

The CITY OF HOUSTON, et al.,
Respondents.

No. C–8285.

Supreme Court of Texas.

March 6, 1991.

Rehearing Overruled April 24, 1991.

Gene Jones, Joan Marie Lucci Bain, Edward L. Lasoff, Richard L. Aman, Houston, for petitioners.

Clarence A. West, John E. Fisher, Jerry E. Smith, Robert J. Collins, Houston, for respondents.

## OPINION

MAUZY, Justice.

This cause requires us to examine the scope of the Fire Fighters' and Police Officers' Civil Service Act, formerly Tex.Rev. Civ.Stat.Ann. art. 1269m,[1] now codified at sections 143.001–143.134 of the Texas Local Government Code ("the Act"). Petitioners, officers in the Houston Police Department, assert that the Act entitles them to promotion with back pay, in addition to declaratory and injunctive relief. The court of appeals reversed the trial court's judgment granting the requested relief, and rendered a take-nothing judgment against the police officers. 762 S.W.2d 180 (1988). In so ruling, the court of appeals held that the Act applies only to positions requiring the performance of law enforcement duties. *Id.* at 186–87. Because we disagree with that construction of the Act, we reverse the judgment of the court of appeals and remand the cause to the trial court for entry

of judgment in accordance with this opinion.

The actions challenged in this suit reflect the City of Houston's ongoing effort to "civilianize" the Houston Police Department (HPD). The court of appeals opinion sets out the pertinent aspects of that effort. In short, the City placed unclassified civilians in managerial positions traditionally held by classified police officers. Petitioners allege that those placements contravened the Act.

The purpose of the Act, as stated in section 143.001, is "to secure efficient fire and police departments composed of capable personnel who are free from political influence and who have permanent employment tenure as public servants." To that end, the Act requires the city council, or other legislative body, to provide by ordinance for the classification of all fire fighters and police officers; that is, to place all such officers within the protection of a civil service system. Section 143.021. The proper boundaries of that system, however, are unclear.

In its original form, the Act defined "policeman" as

> any member of a Police Department who draws compensation for his services as a member of said department.

Tex.Rev.Civ.Stat.Ann. art. 1269m, § 2, Act of June 2, 1947, 50th Leg., R.S., ch. 325, 1947 Tex.Gen.Laws 550, 551. Applying that definition, courts uniformly rejected attempts to remove any police department positions from civil service protection; *all* employees were protected by the Act. *See City of San Antonio v. Handley*, 308 S.W.2d 608, 610 (Tex.Civ.App.—San Antonio 1957, writ ref'd), and cases cited therein.

With a 1957 amendment, however, the Act's definition of "policeman" became less clear, encompassing

> any member of the Police Department appointed to such position in substantial

1. Act of June 2, 1947, 50th Leg., R.S., ch. 325, 1947 Tex.Gen.Laws 550, as amended, *repealed by* Act of May 1, 1987, ch. 149, § 49(1), 1987 Tex.Gen.Laws 1306. The actions giving rise to this suit took place prior to codification, and are therefore governed by article 1269m. However, because codification entails no substantive change, *see* Tex.Loc.Gov't Ann. § 1.001, this opinion refers to the codified version of the statute, except where otherwise noted.

compliance with the provisions of Sections 9, 10, and 11 of this Act ...

Act of June 6, 1957, 55th Leg., R.S., ch. 391, § 1, 1957 Tex.Gen.Laws 1171.[2] Sections 9, 10, and 11 of article 1269m required competitive examinations for appointment to positions in the police department. The codified version of that language, located at section 143.003(5) of the Local Government Code, provides simply that a "police officer" is one who was appointed in substantial compliance with chapter 143 of the code. Thus, since 1957, the Act's most important definition has been circular. Section 143.003(5) states, in essence, that the Act covers whomever the Act covers.[3]

In the years since 1957, a number of courts have addressed questions regarding the coverage of the Act. Almost all of those cases, however, have involved individuals employed prior to 1957, who automatically maintained their civil service status after the amendment. *See, e.g., City of San Antonio v. Carr*, 161 Tex. 155, 338 S.W.2d 122, 124 (1960); *Clack v. City of San Antonio*, 452 S.W.2d 502, 503 (Tex. Civ.App.—San Antonio 1970, writ ref'd n.r. e.).

One prior court has probed the impact of the 1957 amendment. In *City of Wichita Falls v. Harris*, 532 S.W.2d 653 (Tex.Civ. App.—Fort Worth 1975, writ ref'd n.r.e.), the City had hired a "fire training specialist" without following the procedures set out in the Act for the hiring of classified officers. Eight members of the fire department then brought suit to void the city's appointment. The trial court found that the new position fell within the coverage of the Act. In reviewing that finding, the court of civil appeals noted the fundamental circularity of the Act's terms:

If the Act is construed strictly it would mean that the City could employ new firemen who would not be under Civil Service by simply not giving them an examination. The City acknowledges that this is obviously not the intent of the legislature.

*Id.* at 657. To avoid defeating the intent of the legislature, the court construed the Act as a whole. Looking to the job description for the new position, the court observed that "a person holding the position must have knowledge of the principles and practices of fire prevention and suppression." *Id.* at 656. On that basis, the court affirmed the trial court's finding that the position was within the ambit of the Act.

The court of appeals in the present case took a different approach. While noting that the Act should be viewed as a whole, the court placed special reliance on the predecessor to section 143.023(e), which now provides:

An applicant may not be certified as eligible for a beginning position with a police department unless the applicant meets all legal requirements necessary to become eligible for future licensing by the Commission on Law Enforcement Officer Standards and Education.

The only positions that require law enforcement training, the court reasoned, are those that involve traditional law enforcement duties. Thus, the court concluded that the Act encompasses only those employees who actually do "police work;" that is, those who enforce the law, make arrests, and conduct criminal investigations. We disagree.

Nothing in either the language or the history of section 143.023(e) evinces a legislative intent to limit the coverage of the Act. The legislature adopted that provision in 1985, almost forty years after it originally passed the Act. Tex.H.B. 1657,

---

**2.** In 1985, the legislature changed the definition again by adding a reference to officers in specialized police forces, and by adding the words "or other peace officer" after the word "Department." Act of May 27, 1985, 69th Leg., R.S., ch. 958, § 21, 1985 Tex.Gen.Laws 3227, 3241 (discussed *infra* at 297–298).

**3.** Though the parameters of the Act are unclear, the mandatory character of the Act is plain.

Section 143.021(c) unequivocally states that "a position or classification ... may be filled only from an eligibility list that results from an examination held in accordance with this chapter." That requirement is binding. *International Ass'n of Firefighters v. Townsend*, 622 S.W.2d 562 (Tex.1981). To hold otherwise, as the dissent suggests, would be to nullify the Act as a whole.

Act of May 26, 1985, ch. 910, § 4, 69th Leg., R.S., 1985 Tex.Gen.Laws 3046, 3047. If, in passing H.B. 1657, the legislature had intended to restrict the coverage of the Act, it would have amended the statutory provision which purports to establish the Act's scope—namely, section 2 of article 1269m, now codified at section 143.003(5) of the Local Government Code. Notably, on the day after it took final action on H.B. 1657, the 69th Legislature demonstrated that it knew full well how to alter the coverage of the Act. With its adoption of S.B. 540, the legislature extended the coverage of the Act to include specialized police forces, such as park police, airport police, and city marshals, in any city having a population of 1,500,000 or more. Tex.S.B. 540, Act of May 27, 1985, ch. 958, § 22, 69th Leg., R.S., 1985 Tex.Gen.Laws 3227, 3241.[4] To do so, the legislature amended section 2's definition of "policeman" by adding a reference to section 14B, a new section governing such police forces, now found at section 143.103 of the Local Government Code. H.B. 1657, in contrast, did not mention section 2.

The City argues that a broad construction of the Act would bring section 143.-023(e) into conflict with the Act's objective, stated in section 143.001, of promoting efficiency in the police force. If only licensed police officers can hold managerial positions, the argument goes, then the HPD will be unable to utilize the talents of civilians. The premise of that argument is invalid. Section 143.023(e) does not require that all applicants be licensed police officers. Rather, that section requires, by its terms, that applicants meet the requirements necessary to *become* eligible for *future* licensure. Any civilian meeting those requirements may apply for a beginning position; and once hired, that individual may become eligible for promotional positions. Under the Act, promotions are determined by performance on promotional examinations, for which any classified employee—licensed or unlicensed—may sit, as long as the employee meets certain basic requirements. Section 143.028.

Certainly, there might be instances in which a police department would prefer to hire someone from outside the department, rather than to promote from within. We must presume, however, that the legislature took that possibility into account when it created the Act. Our function is not to question the wisdom of the statute; rather, we must apply it as written. *Jones v. Del Andersen and Associates*, 539 S.W.2d 348, 351 (Tex.1976). Moreover, the legislature might reasonably have concluded that the goal of efficiency would be well served by requiring merit-based promotions within the department, rather than giving the department a free hand to hire from without. *See* Note, *Absolute Preferences in Municipal Civil Service Appointments: The Unresolved Conflict With Municipal Discretion*, 64 Mich.L.Rev. 891, 896–97 (1966).

Other provisions, in addition to section 143.023(e), indicate that the legislature intended the Act to have broader application than the court of appeals suggests. Section 143.025(b) requires all applicants to take tests based on "police work *and work in the police department*," suggesting that the Act's reach extends beyond the performance of traditional "police work." Section 143.102 gives the Chief of Police of a large municipality authority to appoint persons to certain command staff positions,[5] suggesting that the Act would oth-

4. In 1983, the legislature apparently tried to effect that change by amending section 14A of article 1269m. Act of June 19, 1983, 68th Leg., R.S., ch. 517, 1983 Tex.Gen.Laws 3006, *repealed by* Act of June 16, 1985, 69th Leg., R.S., ch. 958, § 21, 1985 Tex.Gen.Laws 3227, 3240–41. The City of Houston, however, refused to interpret that amendment in a manner which would extend all provisions of article 1269m to the specialized police forces. Senate Committee on Intergovernmental Relations, Bill Analysis, S.B. 540, 69th Leg., R.S. (1985). Consequently, the legislature acted in 1985 to achieve its aim directly. *Id.*

5. Subchapter G of the Act, which contains section 143.102, generally applies only to a municipality with a population of 1.5 million or more. Section 143.101(a).

Section 143.102 authorizes the Chief of Police to "appoint a person to a command staff position at the rank of assistant chief." Section 143.102(a). This suit involves the placement of civilians in positions which are allegedly the equivalent of *deputy* chief positions; that is,

erwise require competitive testing for those positions. Section 143.109, which similarly applies only to a large municipality, prohibits crossover promotions of classified employees in specialized technical areas, suggesting that the legislature contemplated the inclusion of at least some members of the technical classes within the civil service system.

 In the absence of a clear definition of "police officer," courts should determine the scope of the Act by viewing the statute as a whole. The Act applies to any position requiring a competitive examination. Sections 143.003, 143.021(c).[6] Such an examination tests an applicant's "knowledge of and qualifications for ... police work and work in the police department," as well as the applicant's "general education and mental ability." Section 143.-025(b).[7] We conclude, then, that the Act applies to any position requiring proficiency in all of those areas. If a particular position requires substantial knowledge of "police work and work in the police department," then it must be classified. Conversely, if a position requires no knowledge of such work, then the position need not be classified.[8] Where the duties and functions entailed by a particular job are undisputed, the determination of whether that job requires knowledge of police work and work in the police department is a question of law for the court.

 We recognize that this holding may not resolve all doubts as to whether the Act covers particular positions. However, the legislature's failure to draw a bright line does not, in itself, authorize a court to draw one of its own. It is the obligation of the legislature, rather than the courts, to develop a workable definition of "police officer." *See* Tex. Const. art. II, § 1.[9] A

---

positions which are immediately below the rank of assistant chief. Thus, section 143.102 is not directly applicable to this suit. We note, however, that legislative efforts to authorize the Chief of Police to appoint deputy chiefs have consistently failed. *See* Tex.H.B. 1590, H.B. 1697, H.B. 2218, and S.B. 1187, 71st Leg., R.S. (1989).

**6.** In article 1269m, see sections 2, 8(b), 9(a), and 12(c).

**7.** The local Fire Fighters' and Police Officers' Civil Service Commission must provide for "open, competitive, and free" entrance examinations, § 143.025, and must also provide for fair promotional examinations, § 143.032. Neither section requires that the commission provide the same test for every classification or position. Rather, the commission may design whatever tests are necessary to meet the particular needs of the department, as long as the tests meet the basic requisites of those sections. *See generally* Note, *Civil Service Commission—Civil Service Commissions are Generally Accorded Wide Discretion by the Courts in the Preparation and Administration of Examinations to Meet the Public Demand for the Employment of Individuals in the Public Service,* 30 Drake L.Rev. 650–52 (1980–81).

Similarly, the commission is authorized to specify age and physical requirements for beginning and promotional positions, and to require appropriate physical examinations. Section 143.022. For any given position, the requirements must be the same for all applicants; but nothing in the Act requires the commission to apply the same requirements to every classification or position. Thus, the dissent is flatly wrong in suggesting that a computer genius who is thirty-seven or who has a physical disability is forever barred from supervising the police computer department. Assuming, without deciding, that such a position must be classified, the commission has as much latitude in crafting requirements for that position as it does for any other.

**8.** "Police work," in our view, refers to traditional law enforcement functions. Any broader interpretation would render the phrase redundant. The second half of the phrase, *i.e,* "and work in the police department," encompasses other activities within the department.

Of course, virtually every position may require some knowledge of "work in the police department." However, to apply the Act on that basis alone would be to ignore the conjunctive term "and." The Act applies only to those positions requiring knowledge of "police work *and* work in the police department." Some positions requiring knowledge of work in the police department may not require knowledge of police work; consequently, those positions need not be classified.

**9.** We note that the Act, as a whole, has not suffered from legislative inattention. Since the adoption of the new definition of "policeman," the legislature has amended the statute at least thirty-two times. In none of those instances, however, did the legislature address the opaqueness of the statute's most basic provision. Until the legislature clearly defines the scope of the Fire Fighters' and Police Officers' Civil Service System, courts will be left to apply the vague standard we discern today to increasingly complex bureaucracies.

court may not judicially amend a statute and add words that are not implicitly contained in the language of the statute. *Jones v. Liberty Mutual Ins. Co.*, 745 S.W.2d 901 (Tex.1988).

Moreover, the standard we discern today should, in most cases, produce an unequivocal answer as to whether a particular position must be classified. The average patrol officer's duties certainly require knowledge of police work and work in the police department; to that extent, the average patrol officer's position must be classified. On the other hand, the duties of an ordinary clerk-typist in the police department do not require knowledge of police work and work in the police department; so to that extent, the clerk-typist's position need not be classified.

■ When the duties of a particular position fall outside the scope of the Act, the City may abolish the position, provided it does so in good faith. *Moncrief v. Tate*, 593 S.W.2d 312 (Tex.1980). As long as the position remains within the civil service system, however, any person holding the position is entitled to the full protection of the Act.

■ One critical aspect of civil service protection is the right to seek promotion by way of competitive examinations. Section 143.031. For every classified employee, the civil service system offers a career ladder, whereby the officer may work his or her way upward through the ranks. The various ranks, like rungs on a ladder, must comport with the system as a whole; that is, they must be filled by competitive examination, open to all who meet the basic statutory requirements. The Act does provide special procedures for appointment to positions at the very top of the ladder. Sections 143.013, 143.014, 143.102. At subordinate levels, however, the civil service ladder must remain intact.[10] All positions in the civil service hierarchy—that is, all classified positions, and all positions entail-

ing the supervision of classified employees—must be classified, and all appointments to those positions must be made in accordance with the Act. *See International Ass'n of Firefighters v. Townsend*, 622 S.W.2d 562, 563 (Tex.1981).

■ Evidence in the present case indicates that the City "declassified" certain top-level job assignments within the HPD. The trial court found that four newly-hired, unclassified employees were performing the same duties, and exercising the same supervisory responsibilities, as deputy chiefs of police, while five others assumed the duties and responsibilities of lieutenants. The unclassified employees occupy positions which involve the supervision of classified police and which are thus integral parts of the HPD's civil service hierarchy. Accordingly, the placement of unclassified employees in those positions contravened the Act.

We do not hold that every high-level position in a police department must be held by a classified employee. If a particular job assignment requires no knowledge of police work and work in the police department, and entails no supervision of classified officers, the position need not be classified. Thus, the Act does not necessarily prohibit the vertical declassification of certain subdivisions within the department. Nor does the Act prohibit the holder of a police license from assuming a job assignment outside of the civil service system, when the assignment requires no knowledge of police work and work in the police department, as defined above.

The Act does, however, prohibit *horizontal* declassification across upper levels of bureaucratic subdivisions, when classified employees hold subordinate positions within those subdivisions. The removal of such upper-level positions from the civil service system would expose critical job assignments to political influence, and would obstruct the upward progress of classified

---

**10.** In a city with a population of 1.5 million or more, such as Houston, the Act provides for distinct ladders within specialized police divisions and classes. Section 143.103. Officers in such divisions are still accorded the benefit of

all other provisions in the Act, "including the provisions relating to eligibility lists, examinations, promotions, appointments," etc. Section 143.103(c).

employees. Such declassification would thus thwart the Act's aim of securing efficient police departments. Section 143.001.

We hold that the challenged placements contravened the Act's requirement that all covered positions be filled in accordance with the statutory terms. Section 143.-021(c).[11] We therefore reverse the judgment of the court of appeals and remand the cause to the trial court for entry of judgment in accordance with this opinion.

Dissenting opinion by GONZALEZ, J., joined by CORNYN, J.

GONZALEZ, Justice, dissenting opinion.

Does the law mandate that a police officer who knows nothing about mechanics be promoted over a civilian master mechanic to be head of the automobile fleet maintenance department of the City of Houston Police Department (HPD)? Did the legislature mandate that only a police officer can supervise other police officers, even if the task at hand requires no special law enforcement skills, or that only a police officer can be in charge of the police computer department, police garage, or Police Training Academy? These absurd consequences flow as a result of the majority opinion and are not supported by logic, prior case law, the statute, or the history of the statute.

I agree with the court of appeals that the Firemen's and Policemen's Civil Service Act[1] (the Act) applies only to positions requiring performance of traditional law enforcement duties such as making arrests, enforcing the law and conducting investigations. Moreover, I do not believe that there has been a showing that any "classified position" has been lost. No one lost their job as a result of the ordinances, and the number of positions within a classifica-

tion was the same before and after the passage of the ordinances. For these reasons, I dissent.

The Act provides for the classification of all policemen within the department, and for the promotion of policemen according to their position on eligibility lists compiled from the results of competitive examinations. The Act provides that, except for a few narrow exceptions, "an existing position or classification or a position or classification created in the future either by name or by increase in salary may be filled only from an eligibility list that results from an examination held in accordance with this chapter." Code Section 143.-021(c).[2] In addition to "classified" policemen under the Act, HPD also employs approximately 2,000 employees who do work that does not require the specialized training of police officers, such as clerks, secretaries, computer operators, mechanics, janitors and the like. These employees are protected by another civil service ordinance that covers municipal employees.

In recent years, the trend in the HPD has been to "civilianize" the police department: that is, to hire additional civilians throughout the department for managerial and technical roles in order to free up trained police officers for the police work that only classified law enforcement personnel can do. The city ordinances have ranked Houston police officers below the non-classified chief of police in the following classifications, from highest to lowest rank: assistant chief, deputy chief, captain, lieutenant, sergeant, police officer, and probationary police officer. In my opinion, these are the career ladder positions that the Act endeavors to protect.

The case was tried prior to recodification, under Tex.Rev.Civ.Stat. art. 1269m, *repealed by* Act of 1987, ch. 149, § 49(1), 1987 Tex.Gen.Laws 1306. *Corresponding references to the prior codification are noted in the footnotes.*

---

**11.** In article 1269m, see section 8(b).
 We do not reach the Petitioners' contention that the Respondents' actions amounted to abolition of existing classified positions. *See City of San Antonio v. Wallace,* 161 Tex. 41, 338 S.W.2d 153 (1960).

**1.** Tex.Loc.Gov't Code Ann. §§ 143.001–.134 (Vernon 1988 & Supp.1991). References to the "Act" or the "code" are to the Texas Local Government Code unless otherwise noted.

**2.** *See* Tex.Rev.Civ.Stat. Art. 1269m, § 8(b) (repealed).

The city ordinances that the petitioners assert are in conflict with the Act were passed between 1982–1985.[3] These ordinances created nine "civilian" departments or job assignments encompassing some of the duties formerly performed by classified police officers. The ordinances created four police administrator divisions: Planning and Research, Crime Information Center, Police Garage, and the Police Training Academy. The duties assumed by police administrators were formerly assigned to captains. The ordinances also created the following job assignments: two assistant police administrators; urban policy planner IV, an administrative assistant IV, and an education coordinator in the police academy, each of which is roughly equal in salary and assignment to positions held by a lieutenant.

In 1986, the city council passed City Ordinance 86–1278, which implemented a plan for reorganization by creating four new bureaus in HPD: Management Information, Fleet Maintenance, Career Development, and the Office of Planning and Research. The duties and functions of these bureaus were taken from other departments which were assumed into these new bureaus and four civilian administrators were promoted to head these bureaus. Before this reorganization, bureaus were traditionally headed by deputy chiefs.

The petitioners in this case are HPD police officers of various ranks who are at or near the top of the promotion eligibility list for their respective rank. They allege that the hiring of civilians to fill the new positions violates the Act and assert that had the Act been followed, each would have been promoted either into one of the newly created job assignments or into one of the positions vacated by officers who were themselves promoted.

The petitioners argued in their application for writ of error that the mandatory promotion procedures of the Act govern *all* positions in the HPD,[4] not merely those which entail traditional law enforcement duties. The Act provides:

> The commission *shall provide for the classification* of *all* fire fighters and *police officers*. [Code section 143.-021(a).][5]

> [A]n existing position or classification or a position or classification created in the future either by name or by increase in salary may be filled only from an eligibility list that results from an examination held in accordance with this chapter." [Code section 143.021.][6]

> An eligibility list for a beginning position in the fire or police department may be created only as a result of a competitive examination held in the presence of each applicant for the position.... A person may not be appointed to the fire or police department except as a result of the examination. [Code section 143.-025(b).][7]

> Each person employed by the police department who is a member of the technical or communications class is eligible

3. Houston, Tex., Ordinances 82–1165, 84–1290, and 85–568.

4. In their application, petitioners assert that "the only construction which harmonizes all of the Act's provisions is the one which affords civil service protection to all members of police departments, regardless of whether their job requires police work." This position, shared by the dissent in the court of appeals, 762 S.W.2d 189, was abandoned by petitioners during oral argument of this case:
J. Mauzy: Counselor, are you taking the position that the state civil service law applies to every employee of the police department?
Attorney for Petitioners: No your honor, I am not.
J. Hecht: You do agree that there are some employees of the police department who are not

covered by the statute, and now the squabble is which ones are which?
Attorney for Petitioners: I think that is a possible interpretation.
J. Hecht: In essence there are some employees of a police department who are not covered by the statute? That is your view?
Attorney for Petitioners: I think that probably is the correct interpretation.

5. *See* Tex.Rev.Civ.Stat. Art. 1269m, § 8(a) (repealed).

6. *See* Tex.Rev.Civ.Stat. Art. 1269m, § 8(b) (repealed).

7. *See* Tex.Rev.Civ.Stat. Art. 1269m, § 9(a) (repealed).

for a promotion within that class. [Code section 143.109(b).] [8]

Each provision of this chapter relating to eligibility lists, examinations, appointments, and promotions applies to the appointment or promotion of members of the technical, communications, and uniformed and detective classes within the member's respective class. [Code section 143.109(e).] [9]

The petitioners assert that the court of appeals' construction of "classified positions" as only those positions which require the performance of police work, cannot be harmonized with the broad language of these sections. I disagree. The Act provides that each "police officer is classified as prescribed by this subchapter and has civil service protection." Code section 143.-021(b).[10] In my view, the Act's definition of "police officer" controls the scope of the chapter and precludes application of the Act to the disputed job assignments. In my opinion, the Act applies to HPD members who were appointed to their position "in substantial compliance with this chapter [chapter 143, which is the entire Act] or who is entitled to civil service status under Section 143.005, 143.084, or 143.103." Code section 143.003(5).[11]

The majority declares that this definition is circular, arguing that the Act can be avoided by not requiring any standards of applicants. But the fact that the Act can be given one absurd construction does not justify the opposite extreme. From the legislative history and case law concerning who was covered by the Act formerly, along with an analysis of the requirements to become a "police officer" covered by the

Act, we can determine the intended scope of the Act.

The earliest predecessor to this section, Article 1269m, section 2, broadly defined "policeman" as "any member of the police department who draws compensation for his services as a member of said department." [12] Act of June 2, 1947, ch. 325, § 2, 1947 Tex.Gen.Laws 550, 551. This definition was construed by some courts to include: juvenile social workers, switch board operators, linemen, clerks, mechanics and other employees incidental to the operation of the police department. *See City of San Antonio v. Handley*, 308 S.W.2d 608 (Tex.Civ.App.—San Antonio 1958, writ ref'd); *City of Wichita Falls v. Cox*, 300 S.W.2d 317 (Tex.Civ.App.—Fort Worth 1957, writ ref'd n.r.e.); *City of San Antonio v. Hahn*, 274 S.W.2d 162 (Tex.Civ.App. —Austin 1954, writ ref'd n.r.e.); *City of San Antonio v. Wiley*, 252 S.W.2d 471 (Tex.Civ.App.—San Antonio 1952, writ ref'd n.r.e.).

In reaction to these cases, the legislature narrowed the scope of coverage of the Act by changing the definition of "policeman." In 1957, Section 2 of the Act was amended to define "policeman" as "any member of the Police Department appointed to such position in substantial compliance with the provisions of Sections 9, 10, and 11 of this Act...." Act of 1957, ch. 391, § 1, 1957 Tex.Gen.Laws 1171. Sections 9, 10, and 11 provided some of the qualifications for entry positions as a policeman. After the 1957 amendment, the Act mandates that we look to the qualifications for appointment to the beginning position of police officer to determine the Act's coverage.[13]

---

8. *See* Tex.Rev.Civ.Stat. Art. 1269m, § 14A(a) (repealed).

9. *See* Tex.Rev.Civ.Stat. Art. 1269m, § 14A(d) (repealed).

10. *See* Tex.Rev.Civ.Stat. art. 1269m, § 8(c) (repealed).

11. At the time of suit, the predecessor to this statute defined policemen as those appointed "in substantial compliance with the provisions of sections 9, 10, and 11 of this Act, or entitled to Civil Service Status under section 14B or 24 of the Act." Tex.Rev.Civ.Stat. art. 1269m, § 2.

Sections 9, 10, and 11 refer to the qualifications of beginning policemen, as described below.

12. With the recodification of the act into the Local Government Code, the term "policeman" was replaced by "police officer." Tex.Local Gov't Code Ann. § 143.003 (Vernon 1988).

13. Now the code defines a police officer as one appointed in substantial compliance with chapter 143 of the code, i.e., the entire act. Tex.Loc. Gov't Code Ann. § 143.003(5) (Vernon 1988).

The majority concludes that because the Act includes a requirement that applicants be tested on their knowledge of "police work *and* work in the police department," we must expand the Act's coverage beyond traditional law enforcement positions. This section suggests that a good officer has to know something of the department bureaucracy, but does not mean that department bureaucrats must be police officers. Otherwise, it can just as easily be argued that since the statute requires that all applicants must be able to speak English [14], all English speakers are covered by the Act.

I would not restrict the inquiry to the fact that a written exam is required covering the subjects of police work and work in the police department. The Act does not suggest we may select one of the requirements for appointment to an entry position and ignore all others in determining legislative intent. A written examination is not the only requirement imposed on all applicants by these sections. The Act also requires that, generally, no beginning applicant may be over 36 years of age.[15] It also requires that all applicants for the same position meet the same physical requirements.[16]

Finally the Act requires all beginning police officers to meet the "legal requirements necessary to become eligible for future licensure by the [Texas] Commission on Law Enforcement Officers Standards and Education." TEX.LOC.GOV'T CODE ANN. § 143.023(e) (Vernon 1988).[17] To be eligible for licensing a party must exhibit weap-

ons proficiency. TEX.GOV.CODE § 415.052(a)(5) (Vernon 1990). The Texas Administrative Code defines proficiency in terms of being able to achieve a score of seventy percent shooting various weapons at certain distances. 37 Tex.Admin.Code § 211.104 (1990). Before the court gives too expansive an interpretation to the Act, it should keep in mind that those covered by the Act must meet these additional requirements. It is not true, as the court's opinion would indicate, that all a civilian has to do to qualify for a position is sit down and study for a written examination. Under the court's opinion, a civilian computer genius who is 37 or has a physical disability is forever barred from supervising the police computer department because some employees of the department are police officers. For the same reasons, a civilian master mechanic could not be in charge of the police garage or the best available civilian educator could not be in charge of the police academy. Thus, from the legislative intent to narrow coverage to "police officers," and the nature of the requirements imposed on beginning "police officers," it must be concluded that the Act applies only to the hiring and promotion of employees who were originally appointed to HPD as law enforcement officers, and does not affect HPD's employment of civilians.

This common sense interpretation is consistent with the legislative and judicial history of the Act. Favoring a statutory construction without discriminatory implica-

---

**14.** Tex.Loc.Gov't Code Ann. § 143.023(f) (Vernon 1988).

**15.** The Act provides:

A person who is 45 years of age or older may not be certified for a beginning position in a police department. *A person who is 36 years of age or older and under 45 may not be certified as eligible for a beginning position* in a police department unless the person has at least five years' experience as a peace officer or at least five years' of military experience. Tex.Loc.Gov't Code Ann. § 143.023(c) (Vernon 1988). I do not see how the local commission is authorized to make an exception as the majority suggests.

**16.** The Act requires:

The commission shall set the age and physical requirements for applicants for beginning and promotional positions in accordance with this chapter. *The requirements must be the same for all applicants.* Tex.Loc.Gov't Code Ann. § 143.022(a) (Vernon 1988). *See* Tex.Rev.Civ.Stat. art. 1269m, § 9(d) (repealed). While it is possible that the commission could make a "soft track" and a "hard track," I find the simpler explanation to be that the legislature intended to narrow the Act's applicability to those whose job responsibilities reasonably require them to meet the requirements of the statute, those performing traditional law enforcement duties.

**17.** See Tex.Rev.Civ.Stat. art. 1269m, § 9(e) (repealed).

tions, I am convinced that it is the nature of the job and not the qualifications of one's subordinates that determines whether a supervisor must be a police officer. If an officer is performing a job that does not require traditional law enforcement skills, it makes no sense to require that his or her supervisor must be a law officer. I would hold that it is only those supervisory positions which require the supervision of traditional law enforcement functions that are "classified" supervisory positions.

I disagree that the mere fact that a supervisor supervises classified police officers mandates that the supervisor must also be a police officer as defined by statute. In my opinion, the legislative and judicial history clearly indicates that the 1957 amendment operated as a legislative overruling of the pre–1957 constructions of the Act, and narrowed the scope of the application of the Act to police department employees who perform law enforcement duties.

Petitioners argue that the specific inclusion of specialty positions shows that the Act must have broader application.[18] The fact that the legislature must affirmatively act to extend the Act protection to a class of police department employees implies legislative intent that the Act does not automatically extend to all employees. Also, petitioners ignore the fact that the same statutes expressly preclude the exact "crossover promotions" which petitioners are now seeking:

A member of a particular class is not eligible for promotion to a position outside that class and lateral crossover by promotion by a member of one class to another class is prohibited. If a member of one class wants to change classes, the member must qualify and enter the new class at the lowest entry level of that class.

TEX.LOC.GOV'T CODE ANN. § 143.103(b) (Vernon 1988); see also section 143.109(c). The Act further provides:

Each provision of this chapter relating to eligibility lists, examinations, appointments, and promotions applies to the appointment or promotion of members of the technical, communications, and uniformed and detective classes within the members' respective class.

Id. section 143.109.

Furthermore, as a matter of law there was not a failure to fill a vacancy within a classification in violation of the Act. The Act requires the city council to establish by ordinance the classification of police officers, and the number of positions in each classification. Id. section 143.021(a).[19] The council created the classifications of Assistant Chief, Deputy Chief, Captain, etc. The council does not set forth the job assignment or title that is at issue here. The four positions in question are the heads of (1) the Management Information Bureau (performing the functions of the former Technical Services Bureau, and the Computer Services Division); (2) the Fleet Maintenance Bureau; (3) the Career Development Bureau; and (4) the Office of Planning and Research were created by the Chief of Police, rather than created by ordinance. The number of classified positions were not reduced as a result of the department's reorganization, although some classified officers were transferred to different job assignment. The police civil service system protects **classifications, and positions within the classification,** but does not create a vested interest in any particular **job assignment.** Since no classified position was lost, as a matter of law the plaintiffs have no cause of action.[20]

18. Tex.Loc.Gov't Code Ann. § 143.103(a) (Vernon 1988) extends the act to special peace officers such as park police and airport police. Section 143.109 extends the act to a "communications class", which "each person who performs the technical operation of police radio communications," and "technical class" which includes "each person who performs criminal laboratory analysis and interpretations or the technical aspects of criminal identification and photography." See Tex.Rev.Civ.Stat. art. 1269m, §§ 14A & 14B (repealed).

19. See Tex.Rev.Civ.Stat. art. 1269m, § 8(a) (repealed).

20. The majority describes a "horizontal" and "vertical" classification system that does not exist either in the facts of this case or in the Act. There is no evidence that the legislature ever

I am as troubled by the questions left open by the so-called "standard" adopted in today's opinion. The court writes:

> In the absence of a clear definition of "police officers," courts should determine the scope of the Act by viewing the statute as a whole. The Act applies to any position requiring a competitive examination.[21] (Citations omitted.) Such an examination tests an applicant's "knowledge of and qualifications for ... police work and work in the police department," as well as the applicant's "general education and mental ability." (Citations omitted.) We conclude, then, that the Act applies to any position requiring proficiency in all of those areas. If a particular position requires substantial knowledge of "police work and work in the police department," then it must be classified.

At 294.

Who determines that a particular position requires knowledge of "police work and work in the police department?" The Mayor? City Council? Police Chief? Police Unions? Civil Service Commission? The Courts?

By its very nature, all supervisory positions require that the supervisor know something about the work he or she is supervising whether in the police department or elsewhere. Does today's opinion stand for the proposition that all supervisory positions within the police department will always be covered by the Act?

I am also concerned that the majority overestimates the effectiveness of its new standard. I disagree that "the standard we discern today should, in most cases, produce an **unequivocal** answer as to whether a particular position must be classified." At 295. The majority's conclusion that "the duties of an ordinary clerk-typist in the police department do not require knowledge of police work and work in the police department" is not so obvious under this standard. It seems that all employees of the police department must have some knowledge of police work and work in the police department so a court could conclude that the clerk-typist position was classified under this standard. Furthermore, the argument that the conjunction "and," at 294 n. 7, solves the problem misses the point—the proposed standard is still confusing and subject to broad interpretation.

The court of appeals' common sense reading of the statute was much more likely to result in **unequivocal** answers as to whether a position was classified. The court of appeals' standard established that only positions requiring performance of law enforcement duties or supervision of police officers performing law enforcement duties were classified. 762 S.W.2d at 187. Under this standard, there is no way a court could find that a clerk-typist position was classified. Thus, I agree with the court of appeals opinion and would affirm the court of appeals judgment.

Finally, I am concerned with the procedural disposition of this case. The court "hold[s] that the challenged placements contravened the Act's requirement that all covered positions be filled in accordance with the statutory terms," and "reverse[s] the judgment of the court of appeals and **remand[s]** the cause to the trial court for entry of judgment in accordance with this opinion." At 296. This disposition is confusing. What does this mean? What is the trial court to do? The only guidance given to the trial court to determine if the positions are classified is the majority's so-called new standard: Whether the positions requires proficiency in " 'knowledge of and qualifications for police work and

contemplated or intended the Act to be analyzed in this fashion. The Act does not discuss nonclassified employees of the department, and certainly does not mandate that any supervisor whose duties include the supervision of classified officers must also be classified.

Moreover, there is no horizontal classification in the Act that is not satisfied by the Houston system of providing for the various ranks of the police officers. The Act does nothing more than require that classified police officers be permitted to advance in rank to the same extent after the reorganization of the department as before. The Houston ordinances satisfy this requirement.

21. None of the nine civilian departments or job assignments in question require the taking of competitive examinations.

work in the police department,' as well as 'general education and mental ability.'" At 294. However, the majority correctly states that whether a position comes within the ambit of the Act is a question of law. At 294. Questions of law are within our jurisdiction to render final judgment. Why then does the majority duck rendering judgment in this case? Is this a signal that the court expects for the trial court to conduct an evidentiary hearing before it issues another ruling in this case.

There is no purpose in our **remanding** this cause to the trial court for it to "enter" (render) a judgment that we can render. Alternatively, if the trial court is to hear more evidence regarding whether the positions in question are classified in light of the court's new nebulous standard, then the whole case should be remanded, in the interest of justice, for new trial. Also, the court of appeals never reached the city's factual insufficiency points and today's opinion denies the city their right to a meaningful appellate review.

In conclusion, the majority's convoluted opinion muddles the law and is micro management at its worst. Absent corrective legislation, the court's failure to give clear guidance to the bench and bar will not only serve to keep this case and others like it in the courts for some time to come but will also thwart the Act's purpose of facilitating efficient police and fire departments.

For all of these reasons, I dissent.

CORNYN, J., joins in this dissent.

## OPINION ON MOTION FOR REHEARING

GONZALEZ, Justice, dissenting.

In its motion for rehearing, among other things, the City of Houston alleges that the court: (1) failed to apply the proper standard of review; (2) misinterpreted the purpose and significance of section 143.023(e) of the Fire Fighters' and Police Officers' Civil Service Act[1] (the Act); (3) erred by judicially amending the Act to add words not expressly or necessarily implied in the language of the Act; and (4) that the ma-

jority opinion is internally inconsistent. I agree.

The constitution grants broad discretionary powers to home-rule cities subject to the limitation that ordinances must not be inconsistent with the constitution or other state statute. TEX.CONST. art. XI, § 5; *City of Richardson v. Responsible Dog Owners,* 794 S.W.2d 17, 19 (Tex.1990). Therefore, we should hold that a state statute restricts local autonomy **only** if the legislative intent to do so is unmistakably clear. As we said in *Lower Colorado River Authority v. City of San Marcos:*

> A limitation on the power of home rule cities by general law or by charter may be either an express limitation or one arising by implication. "Such a limitation will not be implied, however, unless the provisions of the general law or of the charter are clear and compelling to that end." [*Glass v. Smith,* 150 Tex. 632, 244 S.W.2d 645, 649 (1951)]. The intention of the Legislature to impose such limitation must "appear with **unmistakable clarity.**" [*City of Sweetwater v. Geron,* 380 S.W.2d 550, 552 (Tex. 1964)].

523 S.W.2d 641, 645 (Tex.1975) (emphasis added). I agree with the City that the petitioners have failed to meet this rigorous burden.

The court holds that the Act proscribes the City's attempt to restructure the police department by ordinance. The City does not advocate an absurdist construction which would "nullify the Act as a whole." 807 S.W.2d 292 n. 3. There is no dispute that the Act is clearly intended to protect traditional law enforcement positions. The issue here is whether the Act clearly extends coverage beyond such positions. The majority opinion does not demonstrate how this legislative intent appears "with unmistakable clarity." To the contrary, it is replete with observations about the *lack of a clear expression of legislative intent.* For example the opinion states:

> the Act requires the city council, or other legislative body, to provide by ordinance

1. Tex.Loc.Gov't Code Ann. §§ 143.001–143.134 (Vernon 1988 & Supp. 1991).

for the classification of all fire fighters and police officers; that is, to place all such officers within the protection of a civil service system. Section 143.021. *The proper boundaries of that system, however, are not clear.*

807 S.W.2d at 291 (emphasis added).

With a 1957 amendment, however, *the Act's definition of "policeman"* [i.e., those covered by the Act] *became less clear....* Thus, since 1957, the Act's most important definition has been circular.

807 S.W.2d at 291 (emphasis added).

Since the adoption of the new definition of "policeman," the legislature has amended the statute at least thirty-two times. In none of those instances, however, did the legislature address the *opaqueness* of the statute's most basic provision. Until the legislature clearly defines the scope of the Fire Fighter's and Police Officers' Civil Service System, courts will be left to apply the vague standard we discern today to increasingly complex bureaucracies.

807 S.W.2d at 294 n. 9 (emphasis added). Thus the court concedes that there is no evidence of a legislative intent that the Act **must** cover any supervisor of a classified officer.

In reaching its decision, the court announces a two-prong test, but fails to apply it to supervisors. Instead, the court announces an additional rule that categorically, supervisors of classified employees must themselves be covered by the Act. It does so based on a concept that "vertical declassification" is permissible while "horizontal" declassification is not. As the City correctly points out in its motion for rehearing, these concepts or categories are nowhere to be found in the language of the Act nor its legislative history. They are of the court's own creation.

The Act unmistakably expresses a policy of providing a career ladder for "police officers" free from political influence. TEX.LOC.GOV'T CODE ANN. § 143.001(a). Nothing in the City's system threatens that policy. If, as here, the number of positions at every rank is not diminished, and a cov-

ered officer is afforded the full panoply of rights such as advancement by competitive testing, that policy is served. Another clear policy of the Act is development and maintenance of an efficient and capable police force. *Id.* This policy is not well served by requiring that positions be filled by persons qualified to be licensed officers without regard for whether those skills are relevant to the job to be performed. This objective is of particular concern given Houston's documented need to devote more qualified personnel to traditional law enforcement duties.

The majority's infringement on local autonomy is unwarranted absent a clear expression of legislative intent to that effect. For these reasons and those discussed in my earlier dissenting opinion, I would grant the motion for rehearing.

CORNYN, J., joins this opinion.