Affirmed as Modified and Majority and Concurring Opinions filed October
30, 2007








Affirmed
as Modified and Majority and Concurring Opinions filed October 30, 2007.

 

                                                                                                                                                            

                                                                                                                                                            

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00279-CV

____________

 

 

IN THE INTEREST OF C.A.M.M.

 

 

 



 

On Appeal from the 310th
District Court

Harris County, Texas

Trial Court Cause No. 94-029839

 



 

C O N C U R R I N G  O P I N I O N








The United States Supreme Court has concluded in a line of
cases that, under the Due Process Clause of the Fourteenth Amendment, parents
have a fundamental right to make decisions concerning the care, custody, and
control of their children.[1] 
The Texas Supreme Court likewise has held that Athe natural right
which exists between parents and their children is one of constitutional
dimensions.@[2]  It used to be
that in a contest between a fit parent and non-parents, the fit parent would
prevail.  See State v. Deaton, 93 Tex. 243, 54 S.W. 901, 903
(Tex. 1900).  That is no longer the case.  Under the Texas Family Code, a trial
court is authorized to deprive a fit parent of the exclusive right to parent
his own child and instead place fundamental parental rights in the hands of
non-parents, to the exclusion of the fit parent.  Though the result the court
reaches today is correct under existing law, this case raises serious questions
about the fundamental rights of fit parents to make decisions concerning the
care, custody, and control of their own children. 








Consistent with the constitutional rights of fit parents,
the Texas Legislature, for the  most part, gives fit parents priority over
non-parents in matters relating to the parents= children.  For
example, except as to parents with a history of domestic violence, the
Legislature, in the Texas Family Code, requires that the trial court appoint a
parent as managing conservator in an original conservatorship suit, unless the
court Afinds that
appointment of the parent or parents would not be in the best interest of the
child because the appointment would significantly impair the child=s physical health
or emotional development.@[3]  Though
grandparents are given standing to file an original suit seeking to be
appointed managing conservators of a child, they must show satisfactory proof
that Athe order
requested is necessary because the child=s present circumstances
would significantly impair the child=s physical health
or emotional development.@[4]  Likewise, though
the trial court may grant a person deemed by the court to have had substantial
past contact with the child leave to intervene in a pending suit filed by a
person authorized to do so, there must be satisfactory proof that Aappointment of a
parent as a sole managing conservator or both parents as joint managing
conservators would significantly impair the child=s physical health
or emotional development.@[5]  Similarly, the
trial court is authorized to order reasonable possession of or access to a
grandchild by a grandparent only if, among other things, the grandparent Aovercomes the
presumption that a parent acts in the best interest of the parent=s child by proving
by a preponderance of the evidence that denial of possession of or access to
the child would significantly impair the child=s physical health
or emotional well‑being.@[6]  This strong
statutory preference favoring parents, known as the Aparental
presumption,@ is a powerful force in a conservatorship proceeding. 
Without it, a fit parent is on equal footing with non-parents vis-à-vis
the conservatorship of the parent=s children.  

Although our lawmakers have adopted a general approach of
giving fit parents priority over non-parents for matters relating to the
parents= children, they
have not done so in all cases.  In cases such as the one now under review, our
lawmakers have chosen to deprive fit parents of the parental presumption,
effectively placing them on a par with non-parents in a contest over
conservatorship of the parents= children.








In this case, the petitioners (collectively ANon-Parents@) filed an
original suit seeking their appointment as primary managing conservators of
Camille[7]
rather than the child=s fit parent (AParent@).  The
Legislature explicitly allows non-parents to do so when they are people Awith whom the
child and the child=s . . . managing conservator . . . or
parent have resided for at least six months ending not more than 90 days
preceding the date of the filing of the petition if the child=s . . . managing
conservator . . . or parent is deceased at the time of the filing of the
petition.@[8]  This statutory
regime makes sense in an original action, because the non-parents would have to
overcome the strong parental presumption before they could be appointed
managing conservators.[9] 
But, in a modification suit, a parent is not given the benefit of the parental
presumptionCeven in a contest with non-parents.  Consequently, the
trial court can modify a conservatorship order based only upon its
determination that Amodification would be in the best interest
of the child and (1) the circumstances of the child, a conservator, or other
party affected by the order have materially and substantially changed . . .
[or] (2) the child is at least 12 years of age and has filed with the court, in
writing, the name of the person who is the child=s preference to
have the exclusive right to designate the primary residence of the child.@[10]  In this case,
the child filed with the court a document reflecting her preference that the
Non-Parents have the exclusive right to designate her primary residence. 
Therefore, without applying the parental presumption and without determining
that the child=s only living parent is unfit, the trial court could
appoint non-parents as managing conservators with the exclusive right to
determine the child=s residence based solely on a Abest interests of
the child@ determination, an inquiry that traditionally did not
even come into play where a fit parent was concerned.  In this way, the Texas
Family Code allows non-parents to usurp fundamental parental rights from a fit
parent.  








By allowing the appointment of non-parents as primary
managing conservators instead of the only surviving parent, who has never been
shown to be unfit, the Texas Legislature has permitted surviving parents= fundamental
constitutional rights ­C  rights Afar more precious
than any property right@[11] ­C to be defeated
without requiring the non-parents to overcome the parental presumption.  Under
the Texas Family Code, even parents whose fitness is unquestioned may be
deprived of the exclusive right to rear their children following the death of
the child=s other parent.  Trial courts are permitted to endow
non-parents with the fundamental decision-making power over where the child
will live and where the child will go to school.  By allowing non-parents to
assert a modification action in this context, the Legislature has sanctioned
this result as long as the trial court finds that it is in the child=s best interest
and as long as the child states that she wants the non-parents to determine
where she lives.

In 1995 our lawmakers enacted a statute providing that any
person who has standing to file an original suit also has standing to file a
modification action.[12] 
Therefore, without explicitly listing them, the Legislature incorporated by
reference the fourteen categories of people or entities who have standing to
file original suits and stated that these parties also may file modification
actions.  Under the unambiguous language enacted by the Legislature in 1995,
the Non-Parents could seek to modify the prior conservatorship order so that
they could be appointed as primary conservators because they are people Awith whom the child
and the child=s . . . managing conservator . . . or parent have
resided for at least six months ending not more than 90 days preceding the date
of the filing of the petition if the child=s . . . managing
conservator . . . or parent is deceased at the time of the filing of the
petition.@[13] 








Under this statutory language, a non-parent with whom a
deceased parent has lived for six months can become the primary joint managing
conservator in lieu of the surviving fit parent, based solely on the stated
preference of a twelve-year-old child and a finding by the trial court that
such an arrangement is in the child=s best interest. 
Some have suggested that, in an as-applied context, the Texas Family Code
violates the substantive due process rights of the fit parent.[14] 
However, the plurality in Troxel v. Granville expressly declined to
define the scope of the parental substantive due process right to which it
referred in the context of the grandparent-access statute at issue in that
case.[15] 
Furthermore, prior to the trial court=s original order
on the petition to modify, the Parent did not request to be appointed primary
or sole managing conservator, and he never asserted pleadings seeking this
relief.  Existing precedent from the United States Supreme Court suggests that
in this context the Parent=s substantive due process rights were
sufficiently protected by the trial court=s Abest interests of
the child@ determination.[16] 
Research has not revealed any precedent from the United States Supreme Court,
the Texas Supreme Court, or this court holding that substantive due process
requires that the Parent be proved unfit or that the parental presumption be
rebutted under the circumstances of this case.  For these  reasons, there is no
merit in the Parent=s as-applied challenge to the
constitutionality of the relevant provisions of the Texas Family Code.  








More than a century ago, in another contest between a fit
parent and non-parents over a child, the Texas Supreme Court addressed the
tension between the rights of a fit parent and the desire for stability for the
child who had been living for an extended time with two non-parents.[17] 
Our high court, reaching a result different than would be permitted under the
current Texas Family Code, stated that, whatever the form of the proceeding,
courts would interfere with parents= rights to custody
of their minor children Awith great caution, and with a deep sense
of responsibility.@ State v. Deaton, 93 Tex. 243, 54
S.W. 901, 903 (Tex. 1900).  The Texas Supreme Court held that Ain the absence of
any positive disqualification of the [parent] for the proper discharge of his
parental duties, he has, as it seems to us, a paramount right to the custody of
his [child], which no court is at liberty to disregard.@  Id.  

Under the former paradigm, fit parents were allowed to
parent their own children.  As long as the parent was not unfit, the courts did
not interfere. A fit parent was presumed to act in his child=s best interest,
so if non-parents sought rights over the fit parent=s child, there was
no need for an analysis of the Holley factors.[18] 
Likewise, in a contest between a fit parent and non-parents, the desires of a
twelve-year old would not be sufficient to overcome the Aparamount right@ of the fit parent
to custody of the child.  See id. Under our current statutory scheme, if
the child of a fit parent would rather live with a non-parent, the trial court
canC and in this case
didChonor the child=s wishes.  As a
result, the Parent=s child is living with the Non-Parents and
they have been awarded the exclusive right to make important decisions in the
child=s life.








Clearly, this paradigm shift has
adversely impacted the ability of fit parents to make decisions concerning the
care, custody, and control of their own children. Under the unambiguous statutes, the Non-Parents were
allowed to file a petition to modify, and the trial court had the statutory
authority to appoint them as primary managing conservators and grant them
rights to the exclusion of the Parent, without application of the parental
presumption or evidence rebutting it, and without any showing that the child=s only living parent was unfit.  Whether or not our lawmakers
actually envisioned such a result when they enacted the relevant statutes, this
court must enforce the unambiguous statutory language as written.[19]
For these reasons, I respectfully concur in the court=s judgment.[20]

 

 

 

 

 

/s/      Kem Thompson Frost

Justice

 

 

 

Judgment rendered
and Majority and Concurring Opinions filed October 30, 2007.

Panel consists of
Justices Frost, Seymore, and Guzman. (Guzman, J., majority).









[1]   See Troxel v. Granville, 530 U.S. 57, 65B66, 120 S. Ct. 2054, 2060, 147 L. Ed. 2d 49 (2000)
(plurality op.) (collecting cases and concluding that Ait cannot now be doubted that the Due Process Clause
of the Fourteenth Amendment protects the fundamental right of parents to make
decisions concerning the care, custody, and control of their children); Stanley
v. Illinois, 405 U.S. 645, 651, 92 S. Ct. 1208, 1212, 31 L. Ed. 2d 551
(1972) (stating that Athe rights to conceive and to raise one=s children have been deemed >essential,= >basic civil rights of man,= and >rights far
more precious . . . than property rights=@)
(citations omitted);  Prince v. Massachusetts, 321 U. S. 158, 166, 64 S.
Ct. 438, 442, 88 L. Ed. 2d 645 (1944) (stating that Ait is cardinal with us that the custody, care, and
nurture of the child reside first in the parents, whose primary function and
freedom include preparation for obligations the state can neither supply nor
hinder@).  





[2]  Southwestern Bell Telephone Co. v. Garza, 164
S.W.3d 607, 622 (Tex. 2004).





[3]  Tex. Fam.
Code Ann. ' 153.131 (Vernon 2002).





[4]  Tex. Fam.
Code Ann. ' 102.004(a) (Vernon Supp. 2006).





[5]  Tex. Fam.
Code Ann. ' 102.004(b) (Vernon Supp. 2006).





[6]  Tex. Fam.
Code Ann. ' 153.433 (Vernon Supp. 2006).





[7]  Camille is the fictitious name used by the majority
for the Parent=s child.





[8]  Tex. Fam.
Code Ann. ' 102.003(11) (Vernon Supp. 2006).





[9]  Tex. Fam.
Code Ann. ' 153.131.





[10]  Tex. Fam.
Code Ann. ' 156.101 (Vernon Supp. 2006); In re V.L.K., 24
S.W.3d 338, 342B43 (Tex. 2000).





[11]  Stanley, 405 U.S. at 651, 92 S. Ct. at 1212.





[12]  See Act of April 6, 1995, 74th Leg., R.S.,
ch. 20, ' 1, 1995 Tex. Gen. Laws 113, 172 (current version at Tex. Fam. Code Ann. ' 153.002).





[13]  Tex. Fam.
Code Ann. '' 102.003(11), 156.002(b).





[14]  See, e.g., David F. Johnson, In re V.L.K.
v. Troxel:  Is the ABest
Interest@ Standard in a Motion to Modify the Sole Managing
Conservator Subject to a Due Process or Due Course Challenge?, 34 St. Mary=s
L.J. 623, 639-49 (2003).





[15]  See Troxel, 530 U.S. at 73, 120 S. Ct. at
2064.





[16]  See Quilloin v. Walcott, 434 U.S. 246, 252B56, 98 S. Ct. 549, 553B55, 54 L. Ed. 2d 511 (1978) (holding that due process rights of father
were sufficiently protected by trial court=s Abest interest of the child@ determination, even though there was no showing that
he was an Aunfit parent,@
where he did not seek to legitimatize the child for the first eleven years of
the child=s life and where father had a relationship with the
child but had never had custody of the child).





[17]  The child of the fit parent had resided in the home of non-parents for
four years (from the time the child was two years old until trial, when the
child was six years old). 





[18]  See Holley v. Adams, 544 S.W.2d 367, 371B72 (Tex. 1976) (listing a range of factors that courts
consider in determining the best interest of the child, including (1) the
desires of the child; (2) the emotional and physical needs of the child now and
in the future; (3) the emotional and physical danger to the child now and in
the future; (4) the parental abilities of the individuals seeking custody; (5)
the programs available to assist these individuals to promote the best interest
of the child; (6) the plans for the child by these individuals or by the agency
seeking custody; (7) the stability of the home or proposed placement; (8) the
acts or omissions of the parent, which may indicate that the existing
parent-child relationship is not a proper one; and (9) any excuse for the acts
or omissions of the parent).

 

 





[19]  See Lee v. City of Houston, 807 S.W.2d 290,
293 (Tex. 1991).  





[20]  The court correctly modifies the trial court=s order because of the trial court=s error in issuing a supervised possession order
rather than a standard possession order as to the Parent.