

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-12-00820-CV
No. 04-12-00871-CV

**WATERS AT NORTHERN HILLS, LLC**
and Lynn Communities, Inc.,
Appellants

v.

**BEXAR APPRAISAL DISTRICT**, Bexar County, Texas,
The City of San Antonio, Texas and Northeast Independent School District,
Appellees

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court Nos. 2012-CI-07543 & 2012-CI-18564
Honorable Fred Shannon, Judge Presiding[1]

Opinion by:  Sandee Bryan Marion, Justice

Sitting:  Catherine Stone, Chief Justice
Sandee Bryan Marion, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  October 2, 2013

AFFIRMED; MOTION DENIED AS MOOT

Appellants, who were the plaintiffs below, own and operate a 304-unit low-income apartment complex known as the Waters at Northern Hills ("the property"), in San Antonio, Texas. Appellees, the defendants below, are the Bexar Appraisal District ("BAD") and various taxing authorities ("Taxing Authorities"). This is an accelerated appeal from the trial court's granting of

---

[1] Sitting by assignment.

appellees' pleas to the jurisdiction. Because we conclude appellants' challenge to the disputed taxes was not timely, the granting of the pleas to the jurisdiction was proper. Therefore, we affirm.

## BACKGROUND

Appellants provide affordable housing for low income and/or moderate income residents of San Antonio. In 2001, both appellants were certified as a Community Housing Development Organization ("CHDO"). For tax years 2001, 2002, and 2003, appellants were granted exemptions from ad valorem taxes on the property. However, for tax year 2004, appellants were required to reapply for a tax exemption, and the application was later denied. Taxes were then assessed on the property for tax years 2004 through 2008, and appellants later challenged these tax assessments. On December 8, 2008, appellants and the Taxing Authorities entered into an "Agreement for the Installment Payment of Delinquent Taxes" ("the installment agreement") that allowed appellants to make installment payments on taxes and interest due for tax years 2006 and 2007. The installment agreement required appellants to pay all future taxes when those taxes became due during the time of the agreement. The last payment was due February 15, 2010, but appellants had the option to renew the installment agreement on or before that date. The agreement did not mention tax years 2004, 2005, or 2008. On December 11, 2008, the trial court signed an agreed judgment in which the court acknowledged the installment agreement and stated that BAD "shall grant" an exemption for tax years 2004 and 2005. Also on December 11, 2008, the trial court signed a second agreed judgment. In this judgment, the trial court again acknowledged the installment agreement, and directed BAD to revise the market value of the property for tax year 2008 and prepare and deliver a corrected supplemental tax bill. In June 2011, the installment agreement was amended to allow appellants to make a monthly payment of $10,000 beginning July 15, 2011 and ending December 15, 2011.

On February 5, 2009, BAD informed appellants they had to submit a new application and supporting documentation for a tax year 2009 exemption on the property. Appellants submitted their new application on April 16, 2009. On June 12, 2009, BAD notified appellants their application had been "disapproved," but asked for additional information to be submitted no later than July 13, 2009, so that BAD could determine whether to grant or deny the exemption. On July 13, 2009, appellants notified BAD of their "conditional protest of the 'disapproval' letter." On February 1, 2010, BAD notified appellants their application for a tax exemption for tax year 2009 had been "denied." Appellants then appealed to the Bexar County Appraisal Review Board ("ARB"), and a formal hearing before ARB was set for October 12, 2010. On October 29, 2010, ARB rejected the protest, and appellant Waters at Northern Hills, LLC ("Waters") sued BAD in district court in November 2010. On July 19, 2011, Waters filed a notice of nonsuit.

On May 4, 2012, both appellants sued all the appellees alleging various claims and requesting a declaratory judgment. In this lawsuit, appellants contended that pursuant to the installment agreement (1) they agreed to dismiss their "litigation against Bexar County"[2] and pay over $1 million in installment payments in exchange for the grant of an exemption and the elimination of taxes for tax years 2004, 2005, and 2008, and (2) BAD agreed the property would maintain its exemption provided statutory requirements for such exemptions were satisfied. Appellants alleged appellees breached this agreement by refusing to acknowledge the property's tax exempt status beyond 2008 and by wrongfully attempting to collect taxes for tax years 2009, 2010, and 2011. Appellants also alleged appellees made continuing promises intended to induce appellants to sign the installment agreement, forfeit their right to protest the assessment of taxes

---

[2] Appellants do not identify this "litigation." It appears appellants are not referring to their November 2010 lawsuit regarding the 2009 tax year, but are, instead, referring to pre-installment agreement litigation involving tax years 2004 through 2008.

for tax years 2004 through 2008, and make over $719,988.00 in payments under the installment agreement. Appellants asserted appellees should be estopped, based on these promises, from revoking or failing to acknowledge the property's tax exempt status and from collecting taxes on the property. Finally, appellants alleged appellees breached a duty of good faith and fair dealing by refusing to acknowledge the property's tax exempt status beyond 2008, accepting payments when it had no intention of acknowledging the tax exempt status beyond 2008, enticing appellants to enter into the installment agreement, and wrongfully assessing taxes for tax years 2009, 2010, and 2011.[3] Appellants also requested a declaratory judgment on the property's tax exempt status, or alternatively, that the agreement was null and void.

BAD and the Taxing Authorities each filed a plea to the jurisdiction. The Taxing Authorities also filed a counterclaim and third party action to recover delinquent taxes for tax years 2006, 2007, and 2009. In a supplemental petition, appellants requested injunctive relief and raised affirmative defenses. The trial court granted the pleas and this appeal ensued.

## TAXING AUTHORITIES' COUNTERCLAIM

In their counterclaim, the Taxing Authorities sought recovery of delinquent ad valorem taxes on the property for tax years 2006, 2007, and 2009. In appellants' suit, they sought a declaratory judgment that they were entitled to an exemption for tax year 2009, and that the installment agreement was null and void and they were entitled to a reimbursement for all sums paid on taxes and interest due for tax years 2006 and 2007. When the trial court granted the Taxing Authorities' plea to the jurisdiction, it severed out the Taxing Authorities' counterclaim.

On July 30, 2013, the parties filed in this court a Joint Motion for Leave to File Joint Stipulations in which they asked this court to grant leave to file Joint Stipulations, dismiss as moot

---

[3] BAD later allowed exemptions for tax years 2010 and 2011.

all issues related to the 2006 and 2007 tax debt and assessment, and retain jurisdiction to determine all issues currently on appeal that relate to or arise out of the claimed tax debt and assessment for tax year 2009. In an order dated August 1, 2013, this court granted the request for leave to file joint stipulations, but held in abeyance all other requested relief pending issuance of this court's opinion on the merits. On August 8, 2013, the parties filed an Unopposed Motion for Leave to File Nonsuit of Counterclaim, in which the parties stated the Taxing Authorities will nonsuit their counterclaim based upon appellants' payment of taxes for tax years 2006, 2007, and 2009, and asking this court "to permit [the Taxing Authorities] to file a motion for nonsuit of their counterclaim for the 2006, 2007 and 2009 tax debt in the underlying cause number 2012-CI-07543." The parties also stated the 2009 taxes were paid under protest, and they have not resolved their dispute over the 2009 tax year assessment. Therefore, on appeal, we address only those issues related to the 2009 tax year. Our disposition of this appeal moots all other issues raised by appellants in their challenge to the trial court's granting of the Taxing Authorities' plea to the jurisdiction.

## THE 2009 TAX YEAR

The Texas Tax Code requires a "party who appeals as provided by this chapter [to] file a petition for review with the district court within 60 days after the party received notice that a final order has been entered from which an appeal may be had or at any time after the hearing but before the 60-day deadline." TEX. TAX CODE ANN. § 42.21(a) (West Supp. 2013). "Failure to timely file a petition bars any appeal under this chapter." *Id.* ARB delivered its decision denying the exemption for tax year 2009 on October 29, 2010 and appellants filed the underlying lawsuit on May 4, 2012. In its plea to the jurisdiction, BAD argued the trial court lacked jurisdiction over claims related to tax year 2009 because appellants did not timely file suit from ARB's decision within the statutory sixty-day period. In their plea to the jurisdiction, the Taxing Authorities also

asserted the trial court lacked jurisdiction because the time to appeal the denial of the 2009 exemption had lapsed.

On appeal to this court, appellants assert their suit is not time-barred because the 2009 tax assessment is null and void, and therefore, may be challenged at any time. If the ARB's October 29, 2010 denial of the 2009 tax exemption is void, then appellants may challenge it by collateral attack outside the statutory sixty-day period. *See PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 271-72 (Tex. 2012) (collateral attack may be brought against void judgment at any time; it need not be brought within definite time period after judgment's rendition). A judgment is void only when it is shown that the court had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act as a court. *Browning v. Placke*, 698 S.W.2d 362, 363 (Tex. 1985) (orig. proceeding) (per curiam). However, if ARB's denial is merely voidable, then it is susceptible only to a direct attack and may not be challenged collaterally. *PNS Stores*, 379 S.W.3d at 271. Appellants contend the 2009 tax assessment is void because ARB lacked jurisdiction to deny the 2009 tax exemption based on ARB's failure to deliver written notice of the denial by May 20, 2009; ARB's failure to hear and determine their protest by July 20, 2009; and ARB's failure to provide written notice of any change in records resulting in increased tax liability by July 20, 2009.[4]

## A.     Notice of Denial of 2009 Tax Exemption

Appellants first assert ARB had no jurisdiction to deny the 2009 tax exemption because it did not timely deny the exemption or give timely notice of the denial. We agree with the general proposition that "all tax assessments, to be valid, must be made as provided by the statute." *Fed. Royalty Co. v. State*, 42 S.W.2d 670, 674 (Tex. Civ. App.—El Paso 1931), *aff'd*, *Sheffield v. Hogg*,

---

[4] On appeal, appellants do not distinguish between BAD and ARB. Because the denial of the 2009 tax year exemption was ultimately decided by ARB, we refer to that entity as needed.

124 Tex. 290, 77 S.W.2d 1021 (1934); *see also Vance v. Town of Pleasanton*, 261 S.W. 457, 458 (Tex. Civ. App.—San Antonio 1924) ("If, in delegating this power [to levy and assess taxes] to the municipality, the statute lays down the manner in which, or mode by which, it shall be exercised, then that manner and mode must be strictly pursued by the municipality in order to give validity to its acts."), *aff'd*, 277 S.W. 89 (Tex. Comm'n App. 1925). But here, there is no dispute that ARB gave appellants notice of the denial of their application for a 2009 tax exemption. The question is what effect did an alleged lack of *timely* notice have on the denial. In other words, we must decide whether an alleged failure by ARB to timely provide notice of its denial of the 2009 tax exemption application rendered the denial void and subject to collateral attack, or merely voidable. For the reasons stated below, we conclude the denial is not void.

Appellants rely on Tax Code section 41.11 for their argument that failure to provide timely notice nullified the denial of the exemption and the assessment of the 2009 taxes. Section 41.11 provides as follows:

> a) Not later than the date the appraisal review board approves the appraisal records as provided by Section 41.12, the secretary of the board shall deliver written notice to a property owner of any change in the records that is ordered by the board as provided by this subchapter and that will result in an increase in the tax liability of the property owner. An owner who receives a notice as provided by this section shall be entitled to protest such action as provided by Section 41.44(a)(3).
> . . .
>
> (c) *Failure to deliver notice to a property owner as required by this section nullifies the change in the records to the extent the change is applicable to that property owner.*

TEX. TAX CODE ANN. § 41.11(a),(c) (West 2008) (emphasis added).

Appellants also rely on a decision from this court for their argument that its lawsuit challenging the 2009 tax assessment is timely because BAD never acquired jurisdiction to deny the 2009 tax exemption based on its alleged failure to provide timely notice. *See Garza v. Block Distrib. Co.*, 696 S.W.2d 259 (Tex. App.—San Antonio 1985, no writ). In *Garza*, there was no

dispute that BAD did not provide Block with notice of an increase in the valuation of its personal property or provide Block with a hearing at which it could protest the increase before ARB. Block then filed suit and the trial court granted a permanent injunction restraining any effort to levy, assess, or collect the taxes. The taxing authority appealed. On appeal, Block argued as follows:

> The 1982 Bexar County Appraisal Review Board's market valuation of Block's tangible commercial property, as indicated in its unsigned letter of December 29, 1982, was void because of the Board's failure to follow the statutory procedure for giving Block notice of the protest hearing. Not only was the Board's determination void, but also the Board never acquired jurisdiction to reassess the value of Block's property. As a result, the Board's determination of value of December 29, 1982, was subject to collateral attack.

*Id.* at 262.

A panel of this court agreed and held that "the Board, in the absence of notice to Block, never acquired jurisdiction to consider any increase in Block's valuation." *Id.* The court was concerned with a taxpayer's due process right to be heard, reasoning that the "rule of due process requires notice of the increase to the taxpayer with an opportunity to be heard before his property may be encumbered by an additional tax lien. . . . Since the Appraisal Board never acquired jurisdiction of the proposed increase in value, its approval thereof was a void act and subject to challenge at any time or place." *Id.*

Due process requires that a taxpayer be given notice and an opportunity to be heard before the taxing authority may raise valuations on a taxpayer's property. *Id.*; TEX. TAX CODE § 41.11(a) ("owner who receives a notice [of change in valuation] is entitled to protest"). If the taxpayer is not notified as required by statute, the increase is a nullity as to that property. TEX. TAX CODE § 41.11(c). However, we note that the events in *Garza* occurred before the enactment of Tax Code section 41.411, which now gives a property owner the right to protest formally the failure of a taxing authority to deliver any notice "to which the property owner is entitled." *Id.* § 41.411(a). The purpose of section 41.411 is to determine whether a property owner failed to

receive notice of the tax assessment, thereby depriving it of the due process right to be heard at the administrative level. *Harris Cnty. Appraisal Review Bd. v. Gen. Elec. Corp.*, 819 S.W.2d 915, 919 (Tex. App.—Houston [14th Dist.] 1991, writ denied). "Therefore, section 41.411 gives the property owner the opportunity to be heard at some stage of the administrative proceeding and in the trial court, satisfying due process." *Denton Cent. Appraisal Dist. v. CIT Leasing Corp.*, 115 S.W.3d 261, 266 (Tex. App.—Fort Worth 2003, pet. denied) (noting statutory scheme for property tax assessment before enactment of section 41.111 often did not provide taxpayers with adequate remedies at law; thus, courts developed equitable remedies to provide taxpayers with due process protections; addition of section 41.411 provided the due process protections absent under prior statutory procedure). Here, because appellants were provided with notice— albeit not within the timeframe appellants argue below should apply—there are no due process concerns. Therefore, we do not believe section 41.11 operates to automatically nullify ARB's denial of the 2009 tax year exemption. Accordingly, we instead look to other sections of the Tax Code to determine whether ARB's alleged late denial "voids" the denial.

The CHDO tax exemption at issue in this case is "perennial" in the sense that it "need not be claimed in subsequent years, and except as otherwise provided by Subsection (e), the exemption applies to the property until it changes ownership or the person's qualification for the exemption changes." TEX. TAX CODE ANN. § 11.43(c) (West Supp. 2013). "However, the chief appraiser may require a person allowed one of the exemptions in a prior year to file a new application to confirm the person's current qualification for the exemption by delivering a written notice that a new application is required, accompanied by an appropriate application form, to the person previously allowed the exemption." *Id.* Here, BAD notified appellants they needed to file a new application for the 2009 tax year exemption. Appellants submitted their new application on April 16, 2009.

"The chief appraiser shall determine the validity of each application for exemption filed with him before he submits the appraisal records for review and determination of protests as provided by Chapter 41 of this code." *Id.* § 11.45(c) (West 2008). "By May 15 or as soon thereafter as practicable, the chief appraiser shall prepare appraisal records listing all property that is taxable in the district and stating the appraised value of each." *Id.* § 25.01(a). "By May 15 or as soon thereafter as practicable, the chief appraiser shall submit the completed appraisal records to the appraisal review board for review and determination of protests." *Id.* § 25.22(a). "If the chief appraiser modifies or denies an exemption, he shall deliver a written notice of the modification or denial to the applicant within five days after the date he makes the determination." *Id.* § 11.45(d). Relying on sections 11.45, 25.01, and 25.22, appellants contend a decision on its new application was required before the May 15, 2009 deadline for submitting the appraisal records listing all taxable property. Based on this assertion, appellants then rely on section 11.45(d) as support for their argument that ARB failed to provide notice of the denial of the application five days later, on May 20, 2009. Therefore, appellants contend ARB's October 29, 2010, notice of the denial was not timely.

We do not agree with appellants that May 15 is the absolute deadline by which the chief appraiser must both prepare appraisal records and submit those records to the ARB. Such an interpretation of sections 25.01(a) and 25.22(a) would render the qualification "or as soon thereafter as practicable" meaningless surplusage. *See Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008) (courts may not adopt a construction that renders any part of a statute meaningless or superfluous). Such an interpretation also ignores other provisions in the Tax Code dealing with property owner protests, which often may be lengthy and document-intense. For example, the Tax Code section that deals with action taken on exemption applications provides as follows:

> The chief appraiser shall determine separately each applicant's right to an exemption. After considering the application and all relevant information, the chief appraiser shall, as the law and facts warrant:
> (1) approve the application and allow the exemption;
> (2) modify the exemption applied for and allow the exemption as modified;
> (3) *disapprove the application and request additional information* from the applicant in support of the claim; *or*
> (4) *deny the application*.

TEX. TAX CODE § 11.45(a) (emphasis added).

"If the chief appraiser requests additional information from an applicant, the applicant must furnish it within 30 days after the date of the request or the application is denied. However, for good cause shown the chief appraiser may extend the deadline for furnishing the information by written order for a single period not to exceed 15 days." *Id.* § 11.45(b). "The chief appraiser shall determine the validity of each application for exemption filed with him before he submits the appraisal records for review and determination of protests as provided by Chapter 41 of this code." *Id.* § 11.45(c).

Section 41.12 requires "[t]he appraisal review board [to] complete substantially all timely filed protests before approving the appraisal records and may not approve the records if the sum of the appraised values, as determined by the chief appraiser, of all properties on which a protest has been filed but not determined is more than five percent of the total appraised value of all other taxable properties." *Id.* § 41.12(b). Section 41.12(b) thus leaves open the possibility that 100% of all timely filed protests will not be completed before the appraisal records are approved. Under these circumstances, the appraisal records may still be approved if the sum of the appraised values of all properties on which filed protests have not been determined is less than five percent of the total appraised value of all other taxable properties.

In this case, on June 12, 2009, BAD notified appellants their application had been "disapproved," but asked for additional information to be submitted no later than July 13, 2009,

so that BAD could determine whether to grant or deny the exemption.  BAD ultimately denied the application and provided notice on February 1, 2010.  Appellants timely protested the denial to ARB, and a formal hearing was set for October 12, 2010.  On October 29, 2010, ARB rejected the protest, Waters sued BAD in district court in November 2010, but nonsuited on July 19, 2011.

We do not believe appellants were denied due process because they received notice of the denial and were provided with an opportunity to be heard on their protest.  Waters availed itself of this opportunity by timely filing its first lawsuit in November 2010.  On this record, we cannot conclude the October 29, 2010, notice of the denial of the application for the 2009 tax exemption rendered ARB's denial void.  *See Harris Cnty. Appraisal Dist. v. Pasadena Prop., LP*, 197 S.W.3d 402, 407 (Tex. App.—Eastland 2006, pet. denied) (holding lack of notice did not make the chief appraiser's cancellation of exemption a void act because "[n]otice is a procedural requirement that does not affect the appraisal district's jurisdiction").

## B.    Determination of 2009 Tax Protest

Appellants next assert the Taxing Authorities had no legal right to assess or collect taxes for 2009 because appellant's protest of the exemption denial was not timely heard or determined by ARB.  Appellants rely on Tax Code section 41.12, which states: "By July 20, the appraisal review board shall: (1) hear and determine all or substantially all timely filed protests; (2) determine all timely filed challenges; (3) submit a list of its approved changes in the records to the chief appraiser; and (4) approve the records."  TEX. TAX CODE § 41.12(a).  In this case, a hearing before ARB was held on September 16, 2010 and the protest was decided on October 29, 2010.  Appellants contend ARB was required to both hear and determine their protest by July 20, 2009, and because it failed to do so, the Taxing Authorities lost jurisdiction to assess and collect taxes for 2009.  For the same reasons set forth above, we disagree.

Appellants' interpretation of section 41.12(a) would render the language "or substantially all timely filed protests" meaningless surplusage. *See Columbia Med. Ctr.*, 271 S.W.3d at 256. Section 41.12(a) does not require that ARB hear and determine all timely filed protests by July 20. Instead, it requires that ARB hear and determine, at a minimum, "substantially all timely filed protests" by that date. Appellants' interpretation would require us to ignore the plain language of the statute, which we decline to do. *See Lee v. City of Houston*, 807 S.W.2d 290, 294-95 (Tex. 1991) (explaining that court may not judicially amend a statute by adding words). Therefore, we cannot conclude the September 2010 hearing or the October 2010 decision rendered the denial of the application for the 2009 tax exemption void.

## C.      Conclusion

A direct challenge to the denial of the application for a 2009 tax year exemption was timely-filed in November 2010. However, the challenge was later nonsuited. Because we conclude ARB's denial of the 2009 tax exemption application is not void, it is susceptible only to a direct attack and may not be challenged collaterally. Therefore, appellants' challenge to the denial of the 2009 tax year exemption and the assessment of the 2009 taxes in the underlying lawsuit is time-barred. Accordingly, the trial court did not err in granting BAD's and the Taxing Authorities' pleas to the jurisdiction.

## CONCLUSION

We overrule appellants' issues on appeal and affirm the trial court's orders granting appellants' pleas to the jurisdiction. We deny as moot the Unopposed Motion for Leave to File Nonsuit of Counterclaim without prejudice to the Taxing Authorities' filing a nonsuit with the trial court in the appropriate trial cause number.


Sandee Bryan Marion, Justice