

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00217-CV

George **LONG**,
Appellant

v.

**ATASCOSA CENTRAL APPRAISAL DISTRICT**,
Appellee

From the 81st/218th Judicial District Court, Atascosa County, Texas
Trial Court No. 23-04-0253-CVA
Honorable Russell Wilson, Judge Presiding

Opinion by:     Velia J. Meza, Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Lori Massey Brissette, Justice
                Velia J. Meza, Justice

Delivered and Filed: April 30, 2025

AFFIRMED IN PART, REVERSED AND REMANDED IN PART

George Long appeals the trial court's order granting a plea to the jurisdiction filed by the

Atascosa Central Appraisal District ("ACAD") and dismissing his petition claiming ACAD failed

to notify him of the removal of an open-space appraisal on his land for the 2022 ad valorem tax

year. We affirm the trial court's judgment in part, reverse and remand in part.

## BACKGROUND

The property that is the subject of this appeal is identified in the Atascosa County Appraisal District, or ACAD, records under Property ID number 217606 (the "Property"). George Long purchased the Property on January 30, 2022, from his niece Rachel Long. Ms. Long, the prior owner, was deeded the Property upon the death of Norman Long on December 31, 2021. For many years under the ownership of Norman Long, the Property was used exclusively for wildlife management and, therefore, qualified as open-space land under section 23.51 of the Texas Tax Code. As open-space land, and more specifically, a "1-d-1 open-space wildlife management valuation," the tract was appraised, for tax purposes, at less than market value under what is commonly referred to as the agricultural use exemption. *See* TEX. TAX CODE §§ 23.51–23.60.

The deed reflecting the purchase of the Property by George Long was recorded in the official deed records of the Atascosa County Clerk's office on February 1, 2022. The deed listed George Long's correct mailing address. According to his affidavit, George Long called the ACAD office "on or before March 11, 2022" and spoke to an employee in charge of deed record changes. She was aware he had purchased the Property. Long asked her whether he needed to take any action to maintain the 1-d-1 open-space valuation for 2022. She told Long he "had two years to submit a new wildlife management plan and application." She did not mention any plans to "pull" the 1-d-1 open-space wildlife management valuation. In its pleadings, ACAD attached the affidavit of the Chief Appraiser Michelle Berdeaux whereby she denied her employee made those statements. In fact, the affiant alleged that she had "personal knowledge that [Long] was told … that as a new property owner, pursuant to section 23.54 of the Property Tax Code, he is required to file a new application." There is no evidence in the record that shows what date or through what means this information was transmitted to Long

The record reflects ACAD updated its ownership records to show Rachel Long as owner of the Property on March 12, 2022. Three days later, ACAD updated its ownership records to show George Long as owner of the Property on March 15, 2022. On March 15, 2022, however, ACAD only mailed a Notice of Open Space Removal to Rachel Long. The notice stated:

> Our records indicate the [Property] requires a new application to be filed to continue receiving the Special Open Space, or 1-D-1 productivity valuation. This letter is notification that the Special Open Space, or 1-D-1 valuation, has been removed. Property owners must file an application in order to receive the special use valuation. Failure to do so will result in the subject property being assessed at market value for the 2022 tax year.

The deadline for filing the new application was listed as April 30, 2022, with late applications subject to a penalty. According to his affidavit, George Long never received the Notice of Open Space Removal. It is undisputed that no application for open-space appraisal was filed by either Rachel or George Long during 2022.

On May 17, 2022, ACAD mailed the 2022 Notice of Appraised Value ("NOAV") for the Property to George Long at his correct address. The NOAV showed a "0" value for "Ag/Timber Land" and "0" value for "productivity value of Ag/Timber Land" and an appraised value of $680,000 based on "Market Value of Non Ag/Timber Land."[1] The NOAV stated the deadline to file a protest of the appraised value was June 17, 2022. According to his affidavit, Long did not see the NOAV until the Fall because he was out of state.[2] When Long received his 2022 tax bill from ACAD in the Fall, he noticed the absence of the open-space valuation and high tax bill based on the Property's market value. Long called ACAD to inquire and was informed the tax roll was already certified and it was too late to file a protest for the 2022 tax year.

---

[1] Open-space appraisal is colloquially referred to as "Ag" for "Agricultural appraisal."
[2] In his brief, Long states that he splits his time between Texas and Alaska.

On December 30, 2022, Long filed a late protest pursuant to section 41.411 of the Tax Code based on ACAD's "failure to send notice" of "denial of open-space valuation." Long also sought to correct clerical errors in the acreage and legal description of the Property.

On February 15, 2023, the Appraisal Review Board ("ARB") held a hearing on Long's section 41.411 late protest. The appellate record in this case does not contain a transcript of the ARB hearing or its written order. However, the fact that such a hearing occurred is uncontested.

Without a written determination of his protest from the ARB, Long sought judicial review of the ARB's determination and filed an original petition in the district court pursuant to Texas Tax Code § 42.01. Long challenged ACAD's "failure to send notice" of its intent to remove the open-space valuation and its "erroneous rejection of Plaintiff's 2022 qualification for 1-d-1 open-space valuation." Long also requested correction of clerical errors in the Property's legal description.

ACAD initially filed a general denial on June 20, 2023, then subsequently filed a plea to the jurisdiction on November 13, 2023. ACAD asserted that by failing to file an open-space appraisal application and timely protest the 2022 appraised value, Long had failed to exhaust his administrative remedies thereby depriving the court of subject matter jurisdiction.

After hearing arguments and considering the pleadings and evidence, the trial court ruled that Long failed to exhaust his administrative remedies as required by the Tax Code and therefore it lacked subject matter jurisdiction to consider his petition. The trial court granted ACAD's plea to the jurisdiction and dismissed Long's petition with prejudice. Long appealed.

**STANDARD OF REVIEW**

We review a trial court's determination of subject matter jurisdiction and ruling on a plea to the jurisdiction *de novo. Tex. Dep't Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004). "In deciding a plea to the jurisdiction, a court may not weigh the claims' merits but must consider only the plaintiffs' pleadings and the evidence pertinent to the jurisdictional inquiry." *Cnty. of Cameron v. Brown,* 80 S.W.3d 549, 555 (Tex. 2002). A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit. *See Bland Indep. School Dist. v.* Blue 34 S.W. 3d 547, 554 (Tex. 2000). The plaintiff bears the burden of pleading facts that affirmatively demonstrate the trial court has jurisdiction. *State v. Holland*, 221 S.W.3d 639, 642-43 (Tex. 2007). When reviewing a trial court's ruling on a plea to the jurisdiction, we construe the pleadings in favor of the pleader and look to the pleader's intent. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex. 1993).

**DISCUSSION**

The Tax Code establishes a detailed set of procedures that property owners must abide by to contest the imposition of property taxes. *See Oncor Elec. Delivery Co. NTU, LLC*, 691 S.W.3d 890 (Texas 2024). The Tax Code also provides that the administrative procedures therein are exclusive, and most defenses are barred if not raised. *Id.* (citation omitted); *see* TEX. TAX CODE § 42.09. As a result, courts are deprived of jurisdiction to decide most matters relating to ad valorem taxes if a property owner fails to exhaust the Tax Code's exclusive administrative remedies. *Oncor Elec. Delivery Co. NTU, LLC*, 691 S.W.3d at 895.

Section 42.01(a)(1) lists six types of ARB orders that the property owner is "entitled to appeal," including "a protest by the property owner as provided by Subchapter C of Chapter 41" and "a motion filed under Section 25.25." *Id.* § 42.01(a)(1)(A)-(B). Additionally, section

42.01(a)(1) authorizes the property owner to appeal an order of the ARB determining, among other things, "that the appraisal review board lacks jurisdiction to finally determine a protest by the property owner under Subchapter C, Chapter 41, or a motion filed by the property owner under [s]ection 25.25." *Id.* § 42.01(a)(1)(E).

### 1. Long's Exhaustion of Available Administrative Remedy Under the Tax Code

In his fourth issue, Long argues he is entitled to judicial review because he exhausted his available administrative remedy by filing a section 41.411 protest and obtaining a determination from the ARB. We agree.

Section 41.411 protests are different than other protests prescribed by the Tax Code since "[their] sole purpose … is to determine whether a property owner failed to receive notice thereby *depriving him or her of the right to be heard* at the administrative level." *Harris Cnty. Appraisal Review Bd. v. Gen. Elec. Corp.*, 819 S.W.2d 915, 919 (Tex. App.—Houston [14th Dist.] 1991, writ denied) (emphasis added); *see Waters at N. Hills, LLC v. Bexar Appraisal Dist.*, 414 S.W.3d 897, 903 (Tex. App.—San Antonio 2013, pet. denied). Thus, "[a] property owner is entitled to protest before the appraisal review board the failure of the chief appraiser or the appraisal review board to provide or deliver any notice to which the property owner is entitled." TEX. TAX CODE § 41.411(a).

A section 41.411 protest is a two-step process which requires the property owner to first establish the "failure of the chief appraiser or the appraisal review board to provide or deliver any notice to which the property owner is entitled." *Id.* § 41.411(a). Upon successful completion of the first step, "the appraisal review board shall determine a protest made by the property owner on any other grounds of protest authorized by this title relating to the property to which the notice applies." *Id.* § 41.411(b). However, "[a] property owner who protests [under] section [41.411] must comply

with the payments required by [s]ection 41.4115 or the property owner forfeits [their] right to a final determination of the protest." TEX. TAC CODE § 41.411(c).

Section 41.4115 of the Tax Code states, "a property owner who files a protest under [s]ection 41.411 must pay the amount of taxes due on the portion of the taxable value of the property subject to the protest that is not in dispute before the delinquency date, or the property owner forfeits the right to proceed to a final determination of the protest." *Id.* § 41.4115(b). Consequently, "[a] property owner who files notice of a protest authorized by [s]ection 41.411 is entitled to a hearing and determination of the protest if the property owner files the notice prior to the date the taxes on the property to which the notice applies become delinquent." *Id.* § 41.44(c).

After a protest is heard, the ARB "shall determine the protest and make its decision by written order." *Id.* § 41.47(a). Section 42.01 of the Tax Code allows a property owner to appeal an ARB order determining: "a protest by the property owner as provided by Subchapter C of Chapter 41; … [or] that the [ARB] lacks jurisdiction to finally determine a protest by the property owner under Subchapter C, Chapter 41." *Id.* § 42.01(a)(1)(A), (E). A property owner perfects their appeal of the ARB's determination by filing a petition for review with the district court within 60 days after receiving notice that the ARB has entered its final order. *Id.* § 42.21(a).

Here, it is uncontested that Long filed a written protest under section 41.411 and paid the taxes on the Property pursuant to section 41.4115 of the Tax Code. *See* TEX. TAX CODE §§ 41.411, 41.4115(b). Despite hearing Long's protest, the ARB did not issue its determination by written order as statutorily required. *Id.* § 41.47(a). Additionally, ACAD does not dispute that Long timely filed his petition for review with the district court.

Long complied with section 41.411 by filing a late protest under the Tax Code. After the ARB held a hearing, Long received a determination from the ARB on his protest. While such

determination should have been made in writing, this lack of a written order does not affect the trial court's jurisdiction since the parties agree that the ARB made a determination against Long's protest.[3] Thus, no further relief was available to Long at the administrative level.

We conclude that ACAD did not establish that Long failed to exhaust his administrative remedies. As such, it was error to grant ACAD's plea to the jurisdiction.[4] We sustain Long's fourth issue and need not consider his seventh issue pertaining to exceptions to the exhaustion of administrative remedies doctrine.

    2.  <u>ACAD's Arguments Fail Considering the Due Process Protections Granted by Section 41.411 of the Tax Code</u>

ACAD argues that Long failed to exhaust his administrative remedies due to his failure to file the statutorily required application for open-space appraisal and timely protest the appraised value of his Property pursuant to Tax Code provisions unrelated to section 41.411. We reject this argument.

As already stated, once a property owner successfully establishes that the appraisal district failed to deliver or provide them with notice, the ARB must determine the other grounds of the protest brought by the property owner. TEX. TAX CODE § 41.411(b). And such other grounds are unfettered by restrictions, including statutory restrictions that would otherwise apply *if* the property owner received the requisite notice. *Parker v. Galveston Cent. Appraisal Dist.*, No. 14-97-00892-CV, 1999 WL 93251, at *3 (Tex. App.—Houston [14th Dist.] Feb. 25, 1999, no pet.); *Denton Cent. Appraisal Dist. v. CIT Leasing Corp.*, 115 S.W.3d 261, 264 (Tex. App.—Fort Worth 2003,

---

[3] We also note that section 42.21(h) of the Tax Code conveys jurisdiction to the trial court, regardless of certain defects in the petition for review, "so long as the property was the subject of an [ARB] order," filed within the statutory deadline, and provided sufficient information to identify the property subject to the petition. TEX. TAX CODE § 42.21(h). Nowhere in sections 41.41 or 42.21 does it mandate that such ARB order be in writing. *Id.*

[4] As we explained, a district court has jurisdiction to review an ARB's order that determined a property owners protest under Subchapter C, Chapter 41, or an order that the ARB lacked jurisdiction to finally determine a protest because a property owner failed to comply with a requirement of Subchapter C, Chapter 41. TEX. TAX CODE §§ 42.01(a)(1)(A), (E).

pet. denied). This is so because "[t]he collection of a tax constitutes a deprivation of property; therefore, a taxing unit must afford a [property owner] due process by giving notice to the [property owner] and a fair opportunity to be heard before that deprivation occurs." *Harris Cnty. Appraisal Dist. v. Pasadena Prop., LP*, 197 S.W.3d 402, 407 (Tex. App.—Eastland 2006, pet. denied). To hold that section 41.411 requires property owners to comply with all the provisions within Subchapter C, Chapter 41—despite not being provided the requisite notice—would constitute "an undue procedural limitation on a [property owner's] ability to assert its rights." *Gen. Elec. Corp.*, 819 S.W.2d at 919.

Therefore, we disagree with ACAD's argument that Long failed to exhaust him administrative remedies by failing to comply with statutory restrictions provided in Subchapter C, Chapter 41 that are unrelated to section 41.411.

### 3. Uniform Declaratory Judgment Act

Long argues in his ninth issue that the trial court had jurisdiction over this case pursuant to the Uniform Declaratory Judgment Act ("UDJA"). We disagree.

Unless the Legislature consents to suit, sovereign immunity generally deprives a trial court of jurisdiction over a lawsuit in which the state or a state agency has been sued. *Tex. Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 388 (Tex. 2011) (citation omitted). Governmental immunity, like sovereign immunity, protects political subdivisions of the state—such as tax appraisal districts—from suit. *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57–58 (Tex. 2011); *see* Tex. Tax. Code § 6.01(c); *see also Falls Cnty. Appraisal Dist. v. Burns*, No. 10-21-00119-CV, 2022 WL 866687, at *5 (Tex. App.—Waco Mar. 23, 2022, pet. denied) (holding that tax appraisal districts are political subdivisions of the state that are protected by governmental immunity).

The UDJA is a remedial statute which allows a person "whose rights, status, and other legal relations … are affected by a statute" to have a court determine "any question of construction or validity arising under the … statute … and obtain a declaration of rights, status, or other legal relations thereunder." TEX. CIV. PRAC. & REM. CODE § 37.004(a). However, the UDJA "does not enlarge a trial court's jurisdiction, and a litigant's request for declaratory relief does not alter a suit's underlying nature." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 370 (Tex. 2009) (citations omitted). Therefore, to bring a UDJA suit against a political subdivision, the Legislature must have expressly waived governmental immunity. *Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 622 (Tex. 2011).

The UDJA waives immunity in certain situations, such as when a person challenges the validity of a statute or brings an *ultra vires* claim against state officials. *Sefzik*, 355 S.W.3d at 620–22. But the UDJA does not waive government immunity when a plaintiff seeks a declaration of their rights under a statute. *Id.* at 621.

In this case, Long did not challenge the validity of the Tax Code, nor did he raise an *ultra vires* claim against an official at ACAD. Instead, Long challenged ACAD's actions and asked the trial court to declare his rights, status, or legal relations pursuant to the Tax Code. Specifically, his UDJA claims asked the trial court to declare that ACAD violated section 1.07(b) of the Tax Code by failing to provide him notice; to declare the ARB's final order unlawful, null, and void; and to award him attorney's fees under the UDJA. The underlying nature of Long's suit is not one in which the Legislature has waived governmental immunity. *See Sefzik*, 355 S.W.3d 618.; *see Heinrich*, 284 S.W.3d 366*; see Burns*, 2022 WL 866687.

As a result, Long's UDJA claims against ACAD are barred by ACAD's governmental immunity, and the trial court lacked jurisdiction over such claims. *Burns*, 2022 WL 866687, at \*5. We overrule Long's ninth issue.

### 4. Long's Remaining Issues

Long's first, second, third, fifth, sixth, and eighth, issues concern either the merits of his claims or issues raised for the first time on appeal.

The scope of our review of a plea to the jurisdiction is limited to the pleadings and the evidence pertinent to the jurisdictional inquiry, not the merits of Long's claims. *Brown,* 80 S.W.3d at 555. For this reason, we will not address Long's third, fifth, and sixth, issues.

Furthermore, appellate courts do not consider issues raised for the first time on appeal. *Mullenax v. Clute*, 615 S.W.2d 307, 309 (Tex. App.—Waco 1981, no writ) (citing *Gray-Taylor, Inc. v. Tennessee, Tex.*, 587 S.W.2d 668 (Tex. 1979); *Gulf Land Co. v. Atlantic Refining Co.*, 131 S.W.2d 73 (Tex. 1939). Therefore, we will not address Long's first, second, and eighth, issues.

### CONCLUSION

Accordingly, we affirm in part, reverse and remand in part.

Velia J. Meza, Justice